LAUGHLIN v. STATE BOARD OF CONTROL ET AL.
(No. 692.)

WATER AND WATER RIGHTS—RESERVOIRS—APPLICATION FOR PERMIT TO CONSTRUCT—PRIORITY—REQUEST FOR ADDITIONAL INFORMATION, EFFECT OF UPON PRIORITY—EFFECT OF INTERMEDIATE APPLICATION ON PRIORITY OF PREVIOUS APPLICATION HELD FOR ADDITIONAL INFORMATION—RIGHT OF APPEAL.

1. The state engineer may, by express provision of statute, require additional information before passing finally upon an application for permit to construct a reservoir.

2. The time within which to furnish additional information requested by the state engineer upon the filing of an application for permit to construct a reservoir is not limited by statute, but such information should be furnished within a, reasonable time.

3. In the statute requiring the state engineer to reject an application for a permit to appropriate water when the proposed use conflicts with existing rights, the words "when the proposed use conflicts with existing rights" means rights which are prior in time to the use of the water.

4. It was not necessary, under the provisions of Sections 743 and 744, Compiled Statutes, 1910, to set forth in an application for a permit to construct a reservoir filed May 14, 1908, or to show upon the map accompanying the applica-

tion, the land intended to be irrigated from the reservoir, but if such application complied in form and contained the requirements of Section 743, it would be complete as a primary application to construct a reservoir; and if the source of supply of water was sufficient, and if the proposed use would not conflict with prior rights, or threaten to be detrimental to the public interest, the applicant would be entitled to a permit.

5. Where an application for a permit to construct a reservoir, which was filed May 14, 1908, was returned by the state engineer to the applicant for additional information concerning the supply ditch, suggesting that if the ditch required enlargement for the purpose of filling the reservoir the written consent of the ditch owners must be filed in the engineer's office before the application could be approved; that the outlet of the reservoir should be shown; and the land on which the water was intended to be used should also be filed upon, or, if filed upon, the number of the permit or the description of the land should be given, so that the reservoir can be tied to the lands for which the water is to be used, *Held,* that the information called for was not required by the statute to be stated in the application, and that the engineer could not properly require, as a condition to his approval of the application, that the land to be irrigated, or the title thereto be shown, since the necessity of such showing for primary permit was dispensed with by the provisions of Section 744, Compiled Statutes, 1910, providing that an enumeration of any lands proposed to be irrigated from the water stored in the reservoir shall not be required in the primary permit.

6. The fact that the state engineer has required additional information before approving an application for a permit to construct a reservoir, under and within the authority conferred upon him by Section 731, Compiled Statutes, 1910, will not disturb the priority of the application as of the date of its filing, if any such information properly required should be furnished within a reasonable time; but upon the furnishing of such information within a reasonable time the application will be entitled to consideration and when approved, will have priority, which priority will not be lost or disturbed by the fact that the application of another party may have been filed in the meantime before final action of the engineer.

7. Where an application for a permit to construct a reservoir filed May 14, 1908, complied with the provisions of Section 743, Compiled Statutes, 1910, which prescribed what should be set forth in such application, and the application was returned for additional information before final action upon it, it was not proper for the state engineer, upon the furnishing of the information in the form of a new application filed June 30, 1908, to reject the application merely upon the ground that a conflicting application had in the meantime been filed by another party.

8. Where the state engineer returned an application for a permit to construct a reservoir for additional information, and, within a reasonable time, another application was filed by the applicant to comply with the requirements of the engineer as to additional information, *Held,* that it should properly and in justice to the applicant be regarded as a part of the original application adding the information called for, and that the applicant's right to the permit should have been determined with reference to the date of filing the original application.

9. In an application for a permit to construct a reservoir it was not necessary to show the title to the proposed reservoir site, or that the right of way for the supply ditch had been obtained, or that the written consent of the owners of a ditch already constructed to enlarge and use it for supplying the reservoir had been secured, or what the title was to the land proposed to be irrigated, since such matters were not required to be stated in the application by the statute expressly prescribing what should be set forth therein.

10. Title to land embraced in a proposed reservoir site or the right of way for the supply ditch are matters without the jurisdiction of the state engineer or the board of control; the applicant assumes the burden of securing such title or easement as a part of the undertaking under the permit applied for, and within the time fixed by the state engineer for so doing.

11. The withholding of a permit to construct a reservoir for additional information with reference to an application which measures up to the requirements of the statute does not forfeit or postpone the right of the applicant, which took effect as of the date of the filing of such application, where such additional information, as in the present case, was filed within a reasonable time.

12. Where an application for a permit to construct a reservoir has been returned by the state engineer for additional information, the applicant is not then in a position to appeal, since the statute gives the right to appeal to an applicant feeling himself aggrieved by an adverse endorsement made by the engineer upon his application, and the withholding of the permit for additional information is not such an indorsement as the statute giving the right of appeal contemplates.

### ON PETITION FOR REHEARING.

13. An application for a permit to construct a reservoir having been received and filed for record in the office of the state engineer May 14, 1908, and returned May 18, 1908, to the applicant by the engineer for additional information concerning the title to the right of way for the supply ditch, and the land proposed to be irrigated, and a showing as to the outlet of the reservoir, matters not required to be set forth in the application for the primary permit, and the applicant by a subsequent application for the same reservoir, received and filed June 30, 1908, attempted a compliance with said request for additional information, *Held*, that, considering the character of the information called for and furnished, the time taken to furnish the information was not unreasonable, and the delay was not such laches as to constitute an abandonment or forfeiture of the first application, so as to authorize the granting of a permit to another party upon an application filed June 22, 1908.

[Decided December 9, 1912.]          (128 Pac. 517.)
[Rehearing denied April 7, 1913.]          (131 Pac. 62.)

ERROR to the District Court, Albany County; HON. CHARLES E. CARPENTER, Judge.

From an order of the State Engineer rejecting an application of Lemuel L. Laughlin for a permit to construct a reservoir, the applicant appealed to the State Board of Control. From a decision of the board sustaining the decision of the engineer an appeal was taken to the District Court of Albany County, which resulted in a judgment affirming the action of the State Engineer and board and a dismissal of the appeal, and thereupon the applicant brought the case to the

Supreme Court on error. The material facts are stated in the opinion.

*N. E. Corthell,* for plaintiff in error.

The sole ground for denying the application of plaintiff in error was the fact that another party had filed a conflicting application between the dates of the filing of his original and amended applications. The State Engineer wrongfully assumed power to consider and determine questions involving the ownership of the land to be used for the reservoir, and to approve the permit of the second applicant in violation of the statute giving the prior right to the first applicant. Priority of appropriation dates from the filing of the application for a permit under the present statutory system. (Comp. Stat. 1910, Secs. 727-752, 739; Whalon v. Canal Co., 11 Wyo. 344; Const., Art. 8, Sec. 5.) Pending action upon an application the engineer may call for additional information to enable him to properly guard the public interests, and he is required to reject an application where there is no unappropriated water or where the proposed use conflicts with existing rights, or threatens to prove detrimental to the public interest. The statute requires the engineer also to indorse on the application his approval or rejection, and from his decision shown by such indorsement an appeal lies. "Existing rights" which would authorize, under the statute, a rejection of an application must refer to water rights, and, as each water right is in all respects subordinate to prior rights, it is not conceived that any new appropriation can impair the value of an existing one in a legal sense. No denial of an appropriation can be justified upon any other ground than that of public interest. Impairment of the value of a *private* interest or the detrimental effect upon a private interest, are contingencies which cannot be considered by the engineer. In view of the emphatic language of the constitution, he cannot refuse a permit unless it is made to appear that the grounds of the decision complained of are such as are recognized and authorized by the constitution and statute. Prima facie, the application of

plaintiff in error should be approved, for such approval is a matter of course unless some constitutional or statutory objection is shown to exist. (Richter v. State, 16 Wyo. 438.)

Upon careful consideration of the proper duties and province of the State Engineer, there would seem to be nothing inconsistent in approving both applications which were presented and filed. These applications had reference to water rights. The right to establish, maintain, construct and operate the reservoir is another affair, which may be dependent upon the ownership of the lands, or the interest or easement in the lands affected, and is to be acquired from another source and in a different way than by an application filed in the office of the State Engineer. The question of the ownership of the land to be used or affected is beyond the engineer's jurisdiction and control. (Sowards v. Meagher (Utah), 108 Pac. 1112.) The filing of an application for a permit in the engineer's notice is merely official notice of the applicant's intention to accept and act upon the offer of the state to grant water rights, which is open to all. (Sowards v. Meagher, supra.) There is nothing in the facts in this case which even suggests a public interest requiring a rejection of the application in question. The terms "public interest" and "public policy" are very closely related. The courts have found it necessary to define the judicial meaning of "public policy," and have held that a state can have no public policy except what is to be found in its constitution and laws. (People v. Hawkins, 157 N. Y. 12; Hollis v. Seminary, 95 N. Y. 166; Vidal v. Philadelphia, 2 Howard, 127.) The exercise of official discretion is controlled by law, and the qualifying words "according to law" are to be read into each statute investing the officer with discretionary power. (Scott v. LaPorte (Ind.), 68 N. E. 278.) The supervision of the waters of the state entrusted to the Board of Control, and somewhat to the State Engineer, comprehends official administrative action rather than judicial. (Farm Inv. Co. v. Carpenter, 9 Wyo. 110.) On the other hand the power to determine property

rights between conflicting claimants is not an administrative matter, but judicial. (State v. Carr, 129 Ind. 44, 28 N. E. 88; Thorp v. Woolman, 1 Mont. 168.) The state has no power to dispose of the public waters except in the matter of regulating appropriations for private beneficial use; it has no right which it can sell. (Rossmiller v. State, 114 Wis. 169, 189 N. W. 839.)

*Groesbeck & Eby* and *D. A. Preston,* Attorney General, for defendants in error.

The Laughlin application, which was returned for correction "for additional information," was never returned by the applicant to the engineer's office, but after an application had been filed by another party Laughlin made a second application, covering practically the same site mentioned and described in the other party's application. Therefore, the engineer rejected the Laughlin application on the ground that a permit had been granted to the other party under a prior application. Laughlin applied not for a water right, but for a reservoir site by the two applications particularly here in question. There was no compliance on his part with the reasonable request for additional information, as will appear by an examination of his second application. On the contrary, an entirely different application was made. (Weil on Water Rights (3rd Ed.), Sec. 414 and note; Pool v. Utah &c. Co., 105 Pac. 289.) It follows that the engineer and the Board of Control, as well as the District Court, faithfully applied the statutory requirements in granting the permit to the prior applicant.

There is a distinction under the provisions of the statute between an application to acquire a water right and one for a permit to construct a reservoir. It is clear that the statute with reference to reservoirs was intended to provide a rule or procedure whereby a reservoir to impound unappropriated waters might be constructed. Conceding that the construction of a reservoir is to impound waters acquired from the state the contention of opposing counsel that the engineer is limited in rejecting permits for reservoirs to cases where

such denial is demanded by the public interest is not applicable. A reservoir can be constructed and filled from a private source without a permit. But if public waters are to be used the Legislature may make such rules and prohibitions as it may see fit. Had the engineer granted the same site to both parties there would have been a conflict as to existing rights, and his act would have been void. (Trade &c. Co. v. Frazer, 148 Fed. 587; Weil on W. R. (3rd Ed.), Sec. 793.) Great discretion is allowed the engineer in calling for additional information with reference to an application for a permit. (Weil on W. R., Sec. 143; Whalon v. Canal Co., 11 Wyo. 313.) Public interest demands the rejection of an application, which, if granted, will conflict with a prior grant. (Cookingham v. Lewis, 114 Pac. 91; Young v. Hinderlider, 110 Pac. 1049.) It is true that the terms "public interest" and "public policy" are closely related. They each mean the public good. Anything which tends to undermine the security for individual rights, or private property, is against public policy and public interest. (Goodyear v. Brown, 155 Pa. St. 514; Spence v. Harvey, 22 Cal. 340; Tarbell v. Rutland, 75 Vt. 347; In re. Lampson's Will, 53 N. Y. Supp. 531; Com. v. Alger, 7 Cush. 84; 2 Kent's Com. 340; Trustees v. Tatman, 13 Ill. 27; Munn v. People, 94 U. S. 121, 24 L. Ed. 84.) Therefore, when any citizen seeks to impound the public waters it becomes not only the prerogative but the duty of the engineer to ascertain whether or not the granting of a permit therefor will conflict with some prior vested interest of another citizen, and if so then to deny the permit. This the engineer did in this case, and he was legally justified, for should he have granted a permit to Laughlin it would have interfered with the right of the other applicant to whom a permit had been granted for the same reservoir site.

(On petition for rehearing.) The decision seems to leave little discretion to the State Engineer, and to give an advantage to an applicant who has not been vigilant, but has

slept on his rights, while another party acting in good faith is held responsible for the laches of the former. Laughlin's second application might possibly be considered as an amended application, had no intermediate application been filed. But in view of the fact that the application of another party had been filed in the meantime a different construction should be given to the new application of Laughlin. The question is somewhat analogous to that which arises under the location of a mining claim, which can afterwards be amended when intervening rights have not accrued. The laws aid those who are vigilant, not those who sleep upon their rights. (7 Allen, 493; 2 Inst. 690.)

The engineer should be given the widest discretion under the law to make effective the mandate of the constitution that he shall have general supervision of the waters of the state and the officers connected with their distribution. The question of laches as to amended applications should be determined in the first instance by the State Engineer, and his discretion should not be disturbed unless it appears to have been grossly abused. (1 Weil on W. R., Sec. 419; 2 id., Sec. 750; 2 Kinney on Irr., pages 1282, 1283.) No judgment should have been directed, since the judgment below was based upon a motion at the close of the testimony which was granted without permitting the appellee to make any defense.

SCOTT, JUSTICE.

On May 14, 1908, an application under the provisions of Secs. 743, 744, Chap. 59, Comp. Stat., was filed in the office of the State Engineer on behalf of the plaintiff in error for a permit to construct a reservoir to be known as Lake Reservoir, for irrigation, stock water and domestic purposes, as recited therein. The application was examined by the State Engineer and that officer on May 18, 1908, returned it to the applicant for additional information. The instrument bears the following endorsement, to-wit:

"State Engineer's Office, State of Wyoming, ss.

"This instrument was received and filed for record on the 14th day of May, A. D. 1908, at 9 o'clock a. m.

"(Signed)        CLARENCE T. JOHNSTON,
"State Engineer."

The application also has the following notation, to-wit: "Superseded by application No. 6 6/321, this being returned for correction. Witness my hand this 9th day of September, A. D. 1908.—Clarence T. Johnston, State Engineer." On June 30, 1908, another application for a permit to construct the Lake Reservoir in behalf of Laughlin was filed in the office of the State Engineer, and which application was designated by the Engineer as No. 6 6/321. The following certificate is endorsed thereon, viz: "This is to certify that I have examined the foregoing application and have returned the same without my approval for the following reasons: 'Application received on June 22nd, 1908, for administrator of the Carroll estate for same reservoir and site; permit issued therefor on this date.'

"Witness my hand this 7th day of July, A. D. 1908.

"CLARENCE T. JOHNSTON,
"State Engineer."

Laughlin appealed from the rejection of his application and the refusal of the Engineer to grant him a permit to construct said reservoir to the Board of Control, which board sustained the decision of the State Engineer, and thereafter Laughlin appealed from the decision of such board to the District Court of Albany County and upon trial the decision of the State Engineer was again affirmed and the appeal was dismissed and Laughlin brings the case here on error. In his letter of May 18, 1908, returning Laughlin's first application the State Engineer says: "We are returning herewith maps and application for the Lake Reservoir for additional information.

"It is proposed to fill this reservoir from the Little Laramie River. The ditch which fills the reservoir is not shown. If it is proposed to fill the reservoir through an existing

ditch, such ditch should be enlarged for the purpose of filling the reservoir, and the written consent of the owners of the ditch must be filed in this office before the application can be approved. The outlet reservoir should be shown and the land on which the water is to be used should also be filed upon. If it is already filed upon the number of the permit or the description of the land should be given so that the reservoir can be tied in to the lands for which the water is to be used." That the State Engineer could before passing finally upon the application require additional information is expressly provided by statute.

A comparison of the applications filed in behalf of Laughlin, to-wit: the one filed on May 14, 1908, and the one filed June 30, 1908, show upon their face that they were filed in his behalf for permit to construct the same reservoir. The endorsement on the first of these applications which was made September 9, 1908, that it was superseded by the last application is not borne out by the facts. There is no pretense that Laughlin was acting in bad faith or intended to surrender any of his rights under his first application. On the contrary, the showing is that his second application was filed in response to the letter of the Engineer calling for additional information with reference to his first application.

Section 744, Chap. 59, Comp. Stat., is as follows:

"All applications under this chapter shall be subject to the provisions of Secs. 728 to 737 inclusive, and Secs. 825, 826, 827, which set forth the duties and authority of the State Engineer and provide for the protection of the rights of applicants; Provided, That an enumeration of any lands proposed to be irrigated under this chapter shall not be required in the primary permit. The party or parties proposing to apply to a beneficial use the water stored in any such reservoir shall file with the State Engineer an application for permit, to be known herein as the secondary permit, in compliance with the provisions of Secs. 727 to 737 inclusive. Said application shall refer to such reservoir

for 'a supply of water and the State Engineer shall not approve the said application and issue secondary permit until the applicant thereunder shall show to such State Engineer by documentary evidence that he had entered into an agreement with the owners of the reservoir for a permanent and sufficient interest in said reservoir to impound enough water for the purposes set forth in said application. When beneficial use has been completed and perfected under the said secondary permit the Division Superintendent shall take the proof of the water user under such permit and the final certificate of appropriation shall refer to both the ditch described in the secondary permit and the reservoir described in the primary permit."

By Section 734 it is provided among other things that "Each application for permit to appropriate water for beneficial uses shall be accompanied by a map or plat in duplicate showing accurately the location and extent of the proposed work." Section 735 provides that "It shall be the duty of the State Engineer to examine these maps or plats and to ascertain if they agree with the description contained in the application, and when found to agree or made to agree, to approve the same, file one copy in his office and return the other approved to the party filing them." Section 737 in its present form has been in force ever since 1907 and provides, at least when the Engineer requires it, that * * * "The maps of all proposed reservoirs shall show the surface of the ground under water, and a sufficient number of lines of level shall be shown so that the contents of the reservoir or basin may be approximately determined. If the levels shall be shown by contour lines they shall be on a scale sufficiently large to show vertical levels not exceeding five feet, and with all such reservoir plans there shall be furnished a plan, on a scale of not less than one inch to four feet, showing the method of providing a wasteway for such reservoir or basin. If the State Engineer deems it necessary he may require the submission of. complete plans and specifications for his approval. He may

also require the filing of field notes of canal and reservoir surveys." In the application filed on behalf of·Laughlin it is stated that the outlet of the proposed reservoir is located in the NE¼ of Section 31, Township 17 North, Range 74 West. Its description or that of the wasteway is by Section 737 to be shown by the plat accompanying and illustrating the proposed work. It will also be observed that the Engineer may require the submission of complete plans and specifications for his approval and the filing of field notes of the proposed reservoir. Such additional information is advisory and evidently so intended by the Legislature. The statute nowhere limits the time within which to furnish such additional information, though doubtless it ought to be furnished within a reasonable time. By Section 729 it is provided that "All applications which shall comply with the provisions of this chapter and with the regulations of the Engineer's office, shall be recorded in a suitable book kept for that purpose; and it shall be the duty of the State Engineer to approve all applications made in proper form, which contemplate the application of the water to a beneficial use and where the proposed use does not tend to impair the value of existing rights, or be otherwise detrimental to the public welfare. But where there is no unappropriated water in the proposed source of supply, or when the proposed use conflicts with existing rights, or threatens to prove detrimental to the public interest, it shall be the duty of the State Engineer to reject such application and refuse to issue the permit asked for." The words "when the proposed use conflicts with existing rights" mean rights which are prior in time to the use of the water. The requirement of a record of the application was evidently deemed necessary to preserve the right of appeal, and as it might have a material bearing if perfected upon the priorities of water rights from the same source of supply.

It was not necessary under the provisions of Sections 743 and 744 to set forth in the application or to show upon the map the land intended to be irrigated from the reservoir.

If the application complied in form and contained the requirements of the former section it was complete as a primary application to construct the reservoir and if the source of supply of water was sufficient and if the proposed use of the water would not conflict with the rights of prior appropriators or threaten to be detrimental to the public interest the applicant was entitled to a permit. (Sec. 729, id.) The information called for by the State Engineer's letter was not required by the statute to be stated in the application. As required by Section 743, it sets forth the applicant's name and postoffice address; the source of the water supply; the nature of the proposed use; the location and description of the proposed work; the time within which it is proposed to begin construction and the time required for the completion of the construction. It was not nor is it here claimed that the approval of the application would be detrimental to the public welfare nor was its refusal subsequently endorsed thereon placed upon that ground. The application measured up to the requirement of the statute, and was, therefore, entitled to be filed, as it was, and to be considered by the State Engineer. Conceding that such officer might require additional information before either approving or rejecting it, to enable him to properly guard the public interests, as provided by Section 731, he could not properly require as a condition to his approval that the land to be irrigated or reclaimed be shown, for the reason that the necessity of such a showing for the primary permit is dispensed with by the provisions of Section 744, above quoted. Nor would the fact that he required additional information under and within the authority conferred upon him by Section 731 disturb the priority of the application as of the date of its filing if any such information properly required should be furnished within a reasonable time; but upon the furnishing of such information within a reasonable time the application would be entitled to consideration and to be approved, if at all, with priority as of the date of its filing, and that right would not be lost or disturbed by the fact that

the application of another party may have been filed in the meantime before the final action of the Engineer. It would not be proper, therefore, under such circumstances for the Engineer to reject the application merely upon the ground that a conflicting application had been afterwards filed by another party. As appears from the endorsement of the State Engineer, the application was not rejected because the information called for was not furnished, but solely on account of the subsequent application. The information seems to have been furnished in the form of another application, but since that was filed to comply with the requirement of the Engineer as to additional information, it should properly and in justice to the applicant be regarded as a part of the original application, adding information called for by the Engineer. Therefore, whatever right Laughlin had to a permit to construct the reservoir should have been determined with reference to the date of filing the original application. (Secs. 730, 750, id.)

The title to the proposed reservoir site, or the right of way for the supply ditch, or the written consent of the owners of a ditch already constructed to enlarge and use it for supplying the reservoir and the title to the land proposed to be irrigated were matters not required by the statute to be stated in this application. The application and permit to construct the reservoir was the initial step and all other matters necessary in order to do so devolved upon the applicant within the time allowed to complete the work. (Sec. 732.) Title to the land embraced in the proposed reservoir site or right of way for the supply ditch were matters without the jurisdiction of the State Engineer or the Board of Control. The applicant assumed the burden of securing such title or easement as a part of the undertaking to construct the reservoir under the permit applied for and within the time to be fixed by the State Engineer for so doing. The application was not defective, nor does the Engineer's letter above set out so state. In that letter he expressly says: "We are returning herewith maps and application

for the Lake Reservoir for additional information." The withholding of the permit for additional information with reference to an application which measured up to the requirements of the statute did not forfeit or postpone the right of the applicant which took effect as of the date of filing such application at least as above stated when such additional information was filed and we think it was so filed in this case within a reasonable time. Laughlin's application had neither been refused nor approved. There was no such endorsement made thereon when it was returned for additional information. He was not then in a position to appeal. It is provided by Sec. 733, id., that any applicant feeling himself aggrieved by the endorsement made by the State Engineer upon his application is given the right of appeal in the manner therein set forth. The statute, Sec. 730, id., contemplates either an endorsement of rejection or approval on the application and when made takes effect as of the date of its filing. There can be no other reasonable conclusion upon the facts and the statutes applicable thereto than that Laughlin's application was valid, entitled to record, and pending at the time of the filing of the application by the administrator of the Carroll estate, and for which latter application permit was granted; and that being so, Laughlin's first application will be regarded as duly recorded at the date of its filing and he was entitled to a prior right to the permit. His second application must be considered only as additional information with reference to his first application. We are of the opinion that the State Engineer, the Board of Control and the District Court of Albany County each erred in its and their judgment in not awarding to the plaintiff in error a permit in accordance with his application filed on May 14, 1908.

Involved in this proceeding are separate incidental applications in behalf of Laughlin for permits to construct a reservoir and to divert and appropriate waters of the state as follows, viz: (1) Application for permit to construct

the Laughlin Reservoir, filed for record in the office of the State Engineer on June 26, 1908, and duly recorded; (2) application for a permit to divert and appropriate flood waters of the Little Laramie River by means of the Laughlin Inlet Ditch for filling the Laughlin and Lake Reservoirs, filed and duly recorded in the office of the State Engineer on June 26, 1908; (3) application for a permit to divert and appropriate flood waters of the Little Laramie River by means of the Lake Inlet Ditch for filling the Lake Reservoir, filed and duly recorded in the office of the State Engineer on June 26, 1908; (4) application to appropriate flood waters of the Little Laramie River through Laughlin and Lake Storage Reservoirs through and by means of Lake Supply Ditch for irrigation purposes, duly filed in the office of the State Engineer on June 26, 1908. There is no endorsement of approval or non-approval upon any of these applications. They all relate to impounding the flood waters of the Little Laramie in the Laughlin and Lake Storage Reservoirs with the exception of the fourth application, which asks for a permit to apply the water to the irrigation of certain lands described therein by conducting it to and through the Laughlin and thence through the Lake Reservoir to such land, and depend upon the granting of a permit for the Lake Reservoir, and these applications show that they were a part of the same system.

The judgment is reversed and the case remanded to the District Court of Albany County with direction to vacate its judgment and to enter judgment awarding L. L. Laughlin, the plaintiff in error here and appellant there, the permit applied for in his application filed May 14, 1908, and to certify such judgment to the Board of Control and the State Engineer with directions to vacate their ruling and to cause the issuance of the permit to construct the Lake Reservoir in accordance with and as of the date of filing his application for a permit, viz: May 14, 1908, and such of the other permits applied for as would be proper in connec-

tion with such reservoir permit as and of the respective dates of filing in the office of the State Engineer.

*Reversed.*

BEARD, C. J., and POTTER, J., concur.

### ON PETITION FOR REHEARING.

SCOTT, CHIEF JUSTICE.

The defendants in error have filed a petition for a rehearing. It is here urged as in their brief filed on the original hearing that Laughlin's application filed on May 14, 1908, was abandoned by him and superseded by his application filed on June 26, 1908. It was insisted on the former hearing and here that the last application being complete in form and not in words expressly referring to the former application must be construed as an original application independent of the former. It will be remembered that the first application, which we held sufficient in form under the statute, was received and filed for record in the office of the State Engineer, and then returned without approval or rejection to Laughlin with a request for additional information.

It is contended that an application such as this may be returned for correction or amendment, and will be allowed to be amended, provided that in the meantime no other valid application for a primary permit had intervened. The application of May 14, 1908, for the primary permit was not inherently defective. As said in the opinion filed, it "measured up to the requirement of the statute," and the Engineer called for no amendment, but for additional information with reference to the application. This was fully discussed and we need not here go over the question again.

It is contended that from May 14, 1908, to June 26, following, was an unreasonable time for Laughlin to take in order to furnish the information called for. It does not appear from the record that Laughlin expressly abandoned his first application or that he was guilty of laches in furnishing the information called for. On the contrary, con-

sidering the character of the information called for and furnished, we are unable to understand how such laches could be imputed to him as would work an abandonment or forfeiture of his first application, which was pending at the time the permit was granted to the administrator of the Carroll estate.

We are of the opinion that all of the questions presented in this application were discussed and decided in the original opinion and we adhere to the conclusion reached therein.

*Rehearing denied.*

POTTER and BEARD, JJ., concur.