**ASSOCIATED ENTERPRISES, INC., and Johnston's Fuel Liners, Inc., Appellants (Petitioners below),**

v.

**TOLTEC WATERSHED IMPROVEMENT DISTRICT and the State Engineer, State of Wyoming, Appellees (Respondents below).**

**No. 4867.**

Supreme Court of Wyoming.

May 18, 1978.

Henry A. Burgess and Kim D. Cannon, of Burgess & Davis, Sheridan, for appellants (petitioners below).

Fred E. Phifer (and Sky Phifer, law student, University of Wyoming, College of Law), Wheatland, for Toltec Watershed Imp. Dist., appellee.

V. Frank Mendicino, Atty. Gen., and Jack Palma, Asst. Atty. Gen., Cheyenne, for the State Engineer, State of Wyoming, appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

This appeal is taken from a district court order affirming the decision of the State Engineer granting to the Toltec Watershed Improvement District an extension of time to commence and complete construction of the Toltec Reservoir and associated facilities, which decision was made and entered under and by authority of § 41–4–506, W.S. 1977 [§ 41–206, W.S.1957, 1975 Cum.Supp.].[1]

---

1. Section 41–4–506, W.S.1977 [§ 41–206, W.S. 1957, 1975 Cum.Supp.], is as follows:

"§ 41–4–506. Time limits for commencing and completing construction work; extensions; forfeiture of rights; cancellation of permit; notice of date of expiration to appropriator.

"Whenever the state engineer places his endorsement of approval on any application for a water permit, he shall require that actual construction work be commenced within the time set by him in the permit and he shall require that construction be completed within the time set by him in the permit. The time set for completion shall not exceed a period of five (5) years after the date of approval of application. In the case of an application for a ditch permit, he shall further require that the application of the water to beneficial use must be completed before the date which he shall specify, and which shall not be earlier than the date specified for the completion of construction; and that final proof of appropriation must be submitted within five (5) years after the date specified for the completion of the application of the water to beneficial use. He may limit the application to a less period of time for the completion of construction and application of water to beneficial use than is asked for in the application. For good cause shown, the state engineer may at any time, or from time to time, before the date of expiration, extend

Appellant, Johnston's Fuel Liners, owns the 333-irrigated-acre reservoir site, and leases it and other ranch properties to appellant, Associated Enterprises. The Toltec Watershed Improvement District is, and has for many years been, the owner of Permit No. 7252 Res., and by its letter of November 13, 1975 to the State Engineer, Toltec requested the extensions of time in question, which application was protested by Johnston's Fuel Liners and Associated Enterprises.

A hearing was had by the State Engineer on May 4, 1976, resulting in an order dated November 12, 1976, granting Toltec until December 31, 1977, to commence construction and until December 31, 1978, to complete the reservoir. The reason given for the grant of the extension of time was that the parties interested, as well as the site itself, had been involved in such litigation as prevented the commencement of construction of the reservoir. It was the decision of the State Engineer that the delays occasioned by the litigation respecting Toltec and its water-right permit constituted good cause for extending the time to commence and complete construction of the reservoir, all as provided for in § 41-4-506, supra.

The appellants argued these following issues in their appearance before the trial court, namely:

1. An extension of Permit 7252 Res. would impair the vested senior water rights of the appellants, contrary to the requirements of the law;

2. The order of the State Engineer was arbitrary and capricious and exhibited an abuse of discretion where the findings of fact and conclusions of law failed to indicate that "good cause" for an extension had been shown; and

3. The findings of fact contained in the State Engineer's Order were not supported by substantial evidence and that certain evidentiary rulings made by the State Engineer were arbitrary and capricious.

In a letter opinion upholding the decision of the State Engineer, the district judge concluded:

1. Nothing in the law prohibited the State Engineer from granting Toltec the extension in question, thus rejecting Appellants' argument concerning impairment of its rights;

2. The record supported a finding that "good cause" for the extension had been shown; and

3. The record provided substantial evidence to support the Order of the State Engineer granting Toltec the extensions of time to commence and complete the Toltec Reservoir.

At the outset, it should be made clear that we do not consider the issue, which the appellants seek to interject at the appellate level, having to do with the validity or invalidity of the original permit to construct the reservoir, to have any relevancy to the issues properly before this court.

■ In a proceeding requesting an extension of time for commencing and completing a reservoir, the appellants did not and could not raise before the State Engineer, or the district court, issues which relate to the propriety of granting the original reser-

---

any or all of these periods. An extension of time for compliance with any of the specified requirements, except as to the requirement relating to the starting of work, shall be construed to automatically extend for a like period the time for compliance with any of the specific requirements in relation to which the time expires thereafter. Default by the holder of the permit in any of the specified requirements shall work a forfeiture of the water right involved. The state engineer may upon such default cancel the permit. The state engineer shall, by registered mail, with a return receipt requested at least three (3) months before default in any of these requirements shall be operative, notify the permit holder, at the post-office address given by him when the time allowed will expire. If the permit holder cannot be reached by registered mail, or if the address of the permit holder is unknown, the state engineer shall publish notice of the default for three (3) weeks in a newspaper of general circulation published in the county, or in case there is no newspaper of general circulation published in the county, then in a newspaper published in the state of Wyoming and in general circulation in the county, the last publication to be at least two (2) months before cancellation of the permit."

voir permit, and we will not consider on appeal matters not raised below. *Angus Hunt Ranch, Inc. v. Bowen*, Wyo., 571 P.2d 974; *Knudson v. Hilzer*, Wyo., 551 P.2d 680; *Guggenmos v. Tom Searl-Frank McCue, Inc.*, Wyo., 481 P.2d 48. See, also, Davis, Administrative Law of the Seventies, § 20.-06, p. 462 (1976).

*Issue Number 1:*

■ The appellants charge error, best summarized in the State Engineer's brief, as follows:

> An extension of the reservoir permit in question would impair the vested rights of the applicant-appellant contrary to the requirements of law.

The trial court denied this contention, and we will affirm the trial court.

In an appellate proceeding confined to the sole issue of whether or not, for good cause, the State Engineer can extend the time within which to commence and complete a reservoir authorized by a permit long since issued, the appellants are, *in reality*, seeking to relitigate the issue of whether or not the *original* granting or denying of a reservoir permit will have the effect of impairing the value of existing water rights. See § 41-4-503, W.S.1977 [§ 41-203, W.S.1957].[2] We said in *Laughlin v. State Board of Control*, 21 Wyo. 99, 128 P. 517, 519:

> "The title to the proposed reservoir site, or the right of way for the supply ditch, or the written consent of the owners of a ditch already constructed to enlarge and use it for supplying the reservoir, and the title to the land proposed to be irrigated, were matters not required by the statute to be stated in this application. *The application and permit to construct the reservoir was the initial step,*

and all other matters necessary in order to do so devolved upon the applicant within the time allowed to complete the work. Section 732. *Title to the land embraced in the proposed reservoir site or right of way for the supply ditch were matters without the jurisdiction of the State Engineer or the Board of Control. . . .*" [Emphasis supplied]

Appellants cannot, in a proceeding contemplated by the extension-of-time statute (§ 41-4-506, W.S.1977 [§ 41-206, W.S.1957, 1975 Cum.Supp.]), supra, litigate claimed rights conceived by the original reservoir permit approval-or-rejection statute (§ 41-4-503, W.S.1977 [§ 41-203, W.S.1957]), supra.

■ The appellants' arguments to the effect that a reservoir permit or its extension may not be granted where senior rights are affected is untenable for other reasons, one of which is that it ignores the existence of the power of eminent domain for reservoir construction.

Article 1, § 32, of the Wyoming Constitution, reads as follows:

> "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for *reservoirs*, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation." [Emphasis supplied]

Article 1, § 33, of the Wyoming Constitution, provides:

> "Private property shall not be taken or damaged for public or private use *without just compensation.*" [Emphasis supplied]

---

2. Section 41-4-503, W.S. 1977 [§ 41-203, W.S. 1957], provides:

"§ 41-4-503. Recordation; approval or rejection generally.

"All applications which shall comply with the provisions of this chapter, and with the regulations of the engineer's office, shall be recorded in a suitable book kept for that purpose; and it shall be the duty of the state engineer to approve all applications made in proper form, which contemplate the applica-

tion of the water to a beneficial use and where the proposed use does not tend to impair the value of existing rights, or be otherwise detrimental to the public welfare. But where there is no unappropriated water in the proposed source of supply, or where the proposed use conflicts with existing rights, or threatens to prove detrimental to the public interest, it shall be the duty of the state engineer to reject such application and refuse to issue the permit asked for."

Section 41–8–113(a)(iii), W.S.1977 [§ 41–354.13 C., W.S.1957, 1975 Cum.Supp.], provides that under conditions provided therein the board of directors of a watershed improvement district shall have power to:

"[e]xercise the power of eminent domain and in the manner provided by law for the condemnation of private property for public use;"

The land here to be taken would be condemned and compensated for, based upon its value as irrigated land unless it is shown that the water rights are to be sold to a third party or transferred to other lands owned by the applicants (§ 41–3–107, W.S. 1977 [§ 41–9, W.S.1957, 1975 Cum.Supp.]). The rights so sold and/or transferred would not suffer *loss of priority*. This process does not, therefore, conceive of an *impairment* of water rights. Section 41–3–107, supra, provides:

"(a) The state board of control is hereby authorized, upon the written petition of the owner, or owners of an adjudicated water right, or water rights appurtenant to lands submerged or to be submerged by the Glendo, Boysen and Yellowtail Reservoirs or any other reservoir completed since January 1, 1952, or that may be constructed in the future, in the state of Wyoming, to issue amended certificates of appropriation of water and to change the point of diversion and means of conveyance for such adjudicated appropriations of water for the irrigation of other lands in the state of Wyoming outside of the reservoir basin in lieu of the submerged lands, *without loss of priority*; . . .

\*    \*    \*    \*    \*    \*

"(c) The owner or owners of lands coming under the provisions of this act [§§ 41–3–107, 41–3–109] may sell or convey such lands submerged or to be submerged by any such reservoir with provisions in the deed or other conveyance that the water rights appurtenant thereto may be detached and transferred as provided herein." [Emphasis supplied]

Under appellants' analysis of what constitutes "impairment," a junior water right could not be granted where it would inundate a senior water right, because that would "impair" the senior right, in violation of the law. Yet, § 41–3–107 specifically provides a remedy for that exact situation when it permits the sale or transfer of the senior right without interference with its priority, and we will not indulge an assumption that supposes the legislature to have passed an act which is of no force and effect. The legislature will not be presumed to intend futile things. *DeHerrera v. Herrera*, Wyo., 565 P.2d 479; *Kuntz v. Kinne*, Wyo., 395 P.2d 286; and *Brinegar v. Clark*, Wyo., 371 P.2d 62. Appellants' interpretation of § 41–8–126, W.S.1977 [§ 41–354.26, W.S.1957, 1975 Cum.Supp.]) which provides:

"[n]othing in this act [§§ 41–8–101 to 41–8–126] shall be construed as to in any manner impair existing water rights, appropriations or priorities.",

would force a construction upon that statute which would have the effect of rendering the entire Watershed Improvement Districts act a nullity.

For the legislature to say, on the one hand, that a watershed district has the power of eminent domain to enable it to build dams and irrigation systems, while, at the same time limiting that right to only those situations in which no existing water rights, appropriations or priorities are impaired, would be inconsistent, impractical, and would have the effect of charging the legislature with the passage of a useless act. The rivers and streams of Wyoming are so completely appropriated that it is now virtually impossible to undertake construction of a reservoir without in some manner affecting an existing water right. The requirement under the statutory provisions for condemnation that this impairment must be compensated for in a just manner nullifies any equitable argument on the part of the prior appropriator.

■ Appellants' interpretation of § 41–8–126, supra, is untenable for still other reasons. The mere extension of time within which to commence and complete a reservoir does not in any manner

"impair existing water rights, appropriations or priorities." § 41–8–126, supra.

**1364**

In *Farm Investment Co. v. Carpenter*, 9 Wyo. 110, 61. P. 258, 269, we held that

". . . [t]he awarding of definite amounts of water to one or more claimants does not ipso facto amount to a denial of the rights of others, nor depend upon a negation of such rights. . . ."

This rule has prevailed throughout the instant litigation. The original reservoir permit was granted many years ago, yet appellants have continued to divert and use the water under their senior water right without interference throughout this period of time. If the right was not interfered with when the reservoir permit was granted in the first place, how can its extension serve to *impair* the appellants' "water rights, appropriations or priorities."? To ask the question is to answer it.

◼ For yet another reason, the appellants' contention must fail. There can be no impairment of the appellants' existing water rights if there is no grant of entry to the land. An extension of time within which to construct a reservoir does not carry with it a right of entry. That is why Toltec is having to condemn the property in a separate action. The right of entry, the easement, must be obtained by grant or condemnation; absent one or the other, the permittee has no right of entry and can, therefore, do no "damage" to Appellants' property rights. Nor does the issuance of a water right

". . . devest the courts of any jurisdiction granted to them by the constitution to redress grievances and afford relief at law or in equity under the ordinary and well-known rules of procedure. A purely statutory proceeding is created, to be set in motion by no act or complaint of any injured party, but which is each instance is to be inaugurated by order of the board,—*a proceeding which is to result, not in a judgment for damages to a party for injuries sustained, nor the issuance of any writ or process known to the law for the purpose of preventing the unlawful invasion of a party's rights or privileges*; but the finality of the proceeding is a settlement or adjustment of the priorities of appropriation of the public waters of the state, . . ." [Emphasis supplied] *Farm Investment Co. v. Carpenter*, 61 P., at 264.

If Appellants believe that the *use* of the permit in question will impair their water rights, they can petition the courts which have retained jurisdiction to make those determinations and redress those grievances; the State Engineer's office is clearly not the appropriate forum in which to seek such relief.

*Issue Number 2:*

◼ The appellants urge, as their second ground for reversal, the following issue, which is properly summarized in the State Engineer's brief, as follows:

"That the Order of the State Engineer was arbitrary and capricious and exhibited an abuse of discretion where the findings of fact and conclusions of law failed to indicate that 'good cause' for an extension had been shown;"

The trial court rejected this contention and we will affirm.

A summary of the relevant findings of fact, conclusions of law, and order, made and entered by the State Engineer on November 12, 1976, are:

*Findings of Fact:*

A request was made on November 13, 1975, pursuant to § 41-4-506, W.S.1977 [§ 41-206, W.S.1957, 1975 Cum.Supp.], to extend the time within which to commence the construction of the reservoir by Toltec Watershed Improvement District—protest was entered by Johnston's Fuel Liners and Bard Ranch Company—public hearing was held and Toltec was allowed one year from date of approval within which to commence construction; Toltec has assurance that funding will be available for construction—judicial notice has been taken of the following facts:

"a. The Contestants, Associated Enterprises, Inc. and Johnston [sic] Fuel Liners, filed a Complaint on November 25, 1974, against Floyd A. Bishop, as State Engineer, Civil Action No. 75-269 in the Second Judicial District, requesting that Permit No. 7252 Res. of the Wyo-

ming State Engineer, as issued to the Toltec Watershed Improvement District, be determined to be invalid as against the rights of the plaintiff [sic] (Contestants herein), and that the State Engineer be, among other things, permanently enjoined from issuing a permit to the Toltec Watershed Improvement District for a reservoir which involves recreational uses when such a permit would impair the senior, statutorily preferred, water rights of the plaintiffs.

"b. On March 6, 1975, the Toltec Watershed Improvement District was granted the right to intervene in the above litigation as Defendant-Intervenor and the litigation was dismissed by the District Court on the 14th day of May, 1975. The case was ultimately appealed to the Wyoming Supreme Court where, on the 30th day of October, 1975, it was ordered dismissed."

Objection to judicially noticed facts was overruled; on October 1, 1974, contestee filed a condemnation complaint in the courts seeking to obtain the lands for the reservoir while the contest here involved was pending and Toltec has been delayed in constructing the reservoir by the aforementioned litigation involving Toltec, Associated Enterprises and Johnston's Fuel Liners, Inc.

*Conclusions of Law:*

The State Engineer has jurisdiction to consider the request for extension of time to commence and complete the reservoir and the Engineer has authority to take judicial notice of the facts noticed as outlined above.

*Order:*

The order of the State Engineer gave Toltec a little more than one year within which to commence the reservoir, and one year from commencement date within which to complete it.

Concerning the question of setting aside orders of administrative agencies, we have said:

". . . [T]he courts may set aside action of an administrative agency only where its action is 'arbitrary or fraudu-

lent or where there is an illegal exercise of discretion; and the burden of proving arbitrary, illegal or fraudulent action is on the complainant.'" *Wyoming Bancorporation v. Bonham,* Wyo., 527 P.2d 432, 436–437.

The appellants have wholly failed to prove the action of the State Engineer to be arbitrary, illegal or fraudulent or that, in granting the extension, his discretion was abused.

■ The State Engineer, in his findings of fact, related that the appellee has been hindered and delayed in its ability to proceed with the condemnation of the land and the construction of the reservoir, pending the outcome of litigation involving the parties hereto and others. In reaching these findings, the State Engineer properly took judicial notice of the above-recited facts, pursuant to authority contained in § 9–4–108(d), W.S.1977 [§ 9–276.26(d), W.S.1957, 1975 Cum.Supp.], which provides:

"Notice may be taken of judicially cognizable facts. In addition notice may be taken of technical or scientific facts within the agency's specialized knowledge or of information, data and material included within the agency's files; the parties shall be notified either before or during the hearing or after the hearing but before the agency decision of material facts noticed, and they shall be afforded an opportunity to contest the facts noticed."

Litigation had, in fact, unavoidably delayed the construction and completion of the reservoir, and these facts are, within the discretion of the State Engineer, sufficient to constitute good cause for granting Appellee its extension of time.

The law pursuant to which the order of the State Engineer was issued states that:

". . . *For good cause shown, the state engineer may* at any time, or from time to time, before the date of expiration, *extend any or all of these periods.* . . ." [Emphasis supplied] § 41–4–506, supra.

Thus, the sole criterion for extending these periods is whether the permittee has shown good cause for the extension. The above-quoted provision from § 41–4–506 finds its

genesis in the common-law concept of due diligence which, in the context of water law, has been expressed as follows:

". . . [T]he law does not require any unusual or extraordinary efforts, but it does require that which is usual, ordinary, and reasonable. The diligence required in the prosecution of the construction of all works necessary for the diversion and application of water in an attempted appropriation of the same is that constancy or steadfastness of purpose or labor which is usual with men engaged in like enterprises, and who desire a speedy accomplishment of their designs. . ."
2 Kinney on Irrigation and Water Rights, p. 1269.

See, also, 1 Hutchins, Water Rights Laws in the Nineteen Western States, p. 374; and 1 Wiel, Water Rights in the Western States, p. 414. It is basic that the determination of diligence is factual in nature and is to be determined from the circumstances surrounding each particular case, 2 Kinney, supra, p. 1269; 1 Hutchins, supra, p. 374; and 1 Wiel, supra, p. 414.

Nevertheless, Appellants allege that the State Engineer's order is not supported by adequate findings of fact and conclusions of law explicitly stating that good cause has been shown for the extensions in question. The purpose of requiring an administrative agency to include findings of fact in its order is to enable the reviewing court to ascertain whether or not such findings are supported by substantial evidence. *Larsen v. Oil & Gas Conservation Com'n*, Wyo., 569 P.2d 87; *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, Wyo., 446 P.2d 550; *State Board of Equalization v. Kansas-Nebraska Natural Gas Company*, Wyo., 457 P.2d 963. The testimony that the State Engineer found persuasive, as the trier of fact, is clearly set out in his findings, and, while it would have been better if he had expressly concluded that the findings constituted good cause,

". . . it is not necessary that the findings of the agency be cast in a particularly formalistic mold. It is enough if the basic facts underlying decision are stated by the administrative tribunal in such a manner that it can be determined on review that the ultimate facts were permissibly inferable from the basic facts." *North State Tel. Co., Inc. v. Alaska Public Util. Com'n*, Alaska, 522 P.2d 711, 718.

It was not necessary for the State Engineer, in this case, to spell out further the fact that when the applicant for an extension is engaged in litigation concerning the validity of his water-right permit, he has, thereby shown good cause for an extension of time to commence and complete construction work under that permit. In the instant matter, the State Engineer has fully complied with applicable statutes and the directions of the Supreme Court relevant thereto.

*Issue Number 3:*

Appellants charge error, likewise best summarized in the State Engineer's brief, as follows:

"That the findings of fact contained in the State Engineer's Order were not supported by substantial evidence and that certain evidentiary rulings made by the State Engineer were arbitrary and capricious."

The trial court denied this contention, and we will affirm the trial court in this respect.

██ Concerning the State Engineer's refusal to consider evidence of the economic feasibility of the project, there is nothing more to add to what the trial court has said. This evidence was not relevant to any issue properly before the State Engineer as he was being asked to consider an extension of time within which to commence and complete a reservoir and, therefore, should have been excluded.

██ With respect to whether or not there was substantial evidence in the record to support the Engineer's findings, this has been covered thoroughly in this opinion.

The State Engineer could extend the time for construction and completion of the reservoir upon a showing of good cause. The facts judicially noticed constituted good

 

cause. Therefore, the findings upon which the Engineer's order was promulgated were supported by substantial evidence.

Affirmed.