656 P.2d 1144 (1983)
ASSOCIATED ENTERPRISES, INC., Johnston's Fuel Liners, Inc., Appellants (Defendants),
v.
TOLTEC WATERSHED IMPROVEMENT DISTRICT, Appellee (Plaintiff).
No. 5694.
Supreme Court of Wyoming.
January 6, 1983.
Henry A. Burgess, Sheridan, for appellants.
*1145 Fred W. Phifer, Wheatland, for appellee.
Before ROONEY, C.J.,[*] and RAPER, THOMAS, ROSE[**] and BROWN, JJ.
BROWN, Justice.
Appellee condemned appellants' land to construct a reservoir. The trial court entered an order granting condemnation and an order of award. A judgment on a jury verdict awarding just compensation for the land taken was also entered. This appeal is from both orders and from the judgment on the verdict.
We will affirm.
Appellants designate the issues on appeal:
"I. Appellee, Toltec Watershed Improvement District, was denied the right to condemn the land of Appellants, Associated Enterprises, Inc., Johnston's Fuel Liners, Inc., and Anabel Malmquist Michele, by reason of W.S. 1977, § 41-8-126, which prohibits impairment of existing water rights, appropriations or priorities.
"II. Appellee, Toltec Watershed Improvement District, was not authorized to condemn land initially for recreation contrary to W.S. 1977, § 41-8-102.
"III. The exercise of the right of eminent domain by Toltec Watershed Improvement District for supplemental water and recreation is not a public necessity, benefit, or advantage which justifies the taking of Appellants' land and impairing its existing water rights permits and appropriations for a reservoir.
"IV. The Verdict should be set aside and vacated as it is not supported by competent evidence and is contrary to the evidence.
"V. Proper interest was not awarded Appellants."
Appellee Toltec Watershed Improvement District was established after a referendum, held pursuant to the Watershed Improvement District Act. Sections 41-354.1 to 41-354.26, W.S. 1957 (Cum.Supp. 1971) (Now §§ 41-8-101 to 41-8-126, W.S. 1977).
The parties here have been involved in litigation for more than twelve years. In 1970 appellee sought a right to enter on to land owned by appellant Associated Enterprises, Inc. and leased by appellant Johnston Fuel Liners, Inc. to carry out foundation studies for a dam site. Appellants resisted, claiming that the Watershed Improvement District Act was unconstitutional because it violated the "one man, one vote" concept under the Wyoming and the United States Constitutions.[1]
We held in Associated Enterprises, Inc. v. Toltec Watershed Improvement District, Wyo., 490 P.2d 1069 (1971), that the "one man, one vote" concept of equal protection under state and federal constitutions is not to be applied to entities such as watershed improvement districts and that the statute creating watershed improvement districts is not unconstitutional as offending such concept. The United States Supreme Court affirmed this decision. Associated Enterprises, Inc. v. Toltec Watershed Improvement District, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973).
In 1978 the parties were again before this court. In that action appellants here contested the authority of the State Engineer to grant appellees an extension of time to commence and complete construction of a reservoir. We affirmed the district court in its decision affirming the State Engineer granting such extension. Associated Enterprises, Inc. v. Toltec Watershed Improvement District, Wyo., 578 P.2d 1359 (1978).
In 1974 appellee filed a complaint to condemn 264.68 acres of appellants' land on which to construct a reservoir.[2] Appellants *1146 appeal from the district court's order granting condemnation, order of award and judgment awarding compensation.

I
Appellants' most compelling argument for reversal is their contention that § 41-8-126, W.S. 1977, constitutes a statutory limitation upon appellee's eminent domain authority. This statute provides:
"Nothing in this Act shall be so construed as to in any manner impair existing water rights, appropriations or priorities."
Appellee says that appellants still have their water rights and priorities. Appellee contends that appellants' land was condemned as irrigated land and compensation was awarded on that basis, but that appellants still own the water rights. Appellants argue that this is a valueless property right. Appellants placed in evidence an affidavit that there was no land to which appellants' water rights could be transferred. Furthermore, appellants' water rights, if they have any left, are subject to being extinguished by nonuse.[3]
Appellee says that its right to condemn appellants' land was determined by this court in a prior case between the same parties. In Associated Enterprises, Inc. v. Toltec Watershed Improvement District, supra, at 1363, we said we would not assume that the legislature would pass an act which would have no force or effect, because the legislature will not be presumed to intend futile things. We went on to say that appellants' interpretation of § 41-8-126, supra, would force a construction that would nullify the entire Watershed Improvement District Act:
"For the legislature to say, on the one hand, that a watershed district has the power of eminent domain to enable it to build dams and irrigation systems, while, at the same time limiting that right to only those situations in which no existing water rights, appropriations or priorities are impaired, would be inconsistent, impractical, and would have the effect of charging the legislature with the passage of a useless act. The rivers and streams of Wyoming are so completely appropriated that it is now virtually impossible to undertake construction of a reservoir without in some manner affecting an existing water right. The requirement under the statutory provisions for condemnation that this impairment must be compensated for in a just manner nullifies any equitable argument on the part of the prior appropriator."
We also said in that case that the land to be taken would be compensated for as irrigated land, unless it could be shown that the water rights were to be transferred to a third party or transferred to other lands.[4]
*1147 Appellants vigorously contend that what we said in the 1978 case of Associated Enterprises, Inc. v. Toltec regarding eminent domain was dicta and not precedent. Appellants further contend that this court's decision in that case assumed facts not in the record. We will not review the issues and record in the 1978 case to determine whether what we said in that case was dicta. We are satisfied that the analysis is sound, and that it is applicable to this case, where the issue of appellee's right to condemn appellants' land is squarely before this court.
It is difficult to see how the purposes of the Act could be accomplished without in some way affecting existing water rights. While the construction of a reservoir may be the key to a water improvement project, other facilities are also necessary. Canals, laterals, flumes and diversion structures must also be built. Construction of any of these facilities would have to affect existing water rights in some way. If we were to accept appellants' argument here and interpret § 41-8-126 literally, we would nullify the Act. "`The will or caprice of an individual would often defeat the most useful and extensive enterprises * * *'." 4 Clark, Waters & Water Rights, § 303.1, p. 72 (Allen Smith Company, 1970).
Part of the problem here may be due to the feeling which a commentator said could apply to Wyoming law of water transfers, and which we think could also apply to the condemnation of property that has appurtenant water rights:
"* * * [I]t may be hazarded that the answer lies in a strong `heirloom attitude' of the Wyoming ranch and farm water user. He feels that water is his most precious asset, his heritage, his birthright. To sell it would be sinful. Laws against sin are much in favor. In part this attitude may come from a misunderstanding, a fear that stability of water rights is at stake, that water will be `taken' from irrigators without compensation, as may be done in some eastern states. * * *" 1 Land & Water Review, p. 73 (1966).
Here, appellants have been compensated for the untransferred water rights by being paid for irrigated land. We would venture a guess, therefore, that their real objection comes from a feeling that a "birthright" has been taken from them, and that no compensation for the loss of that "birthright" would be adequate.
We can easily understand such an objection, but we do not believe that the legislature would provide for a comprehensive watershed improvement scheme in the 25 sections of the Act and then render it meaningless in one sentence. We hold that the prohibition against impairment of existing water rights, appropriations, or priorities contained in § 41-8-126, supra, is not absolute and that the purpose of the statute is satisfied if just compensation is awarded. This holding is consistent with general condemnation law, although general condemnation law admittedly does not contain a provision identical to § 41-8-126.

II
When this condemnation was commenced in 1974 the purposes of the Watershed Improvement District Act were:
"The purposes of this act are to provide for the prevention and control of erosion, flood water and sediment damages, and the storage, conservation development, utilization, and disposal of water, and thereby to preserve and protect land and water resources, and protect and promote the health, safety, and general welfare of the people of this state." § 41-354.2, W.S. 1957 (Cum.Supp. 1975).
In 1975 the following provision was added to the purposes of the Act:
"Recreational use may be included in conjunction with projects developed in compliance with the purposes of this act, but nothing in this act shall be interpreted to give initial power of condemnation for recreational purposes. * * *" § 41-354.2, W.S. 1957 (Cum.Supp. 1971).
Appellants submit that recreational use cannot be included in the project since the statute in effect when the complaint was filed was silent regarding recreational use. *1148 The complaint for condemnation did not mention condemning for recreational use, nor did the appellee's condemning resolution. However, the "Watershed Work Plan for the Upper North Laramie River," which appellee and numerous state and federal agencies produced in 1967, does provide for recreation, among other things. It was always contemplated that the reservoir would be "multiple purpose."
When the complaint was filed, the Wyoming Game and Fish Commission had an agreement that appellee would condemn land sufficient to store 520 acre feet of water with 60 surface acres for a fishery. In November, 1974, appellee and the Game and Fish Commission cancelled their agreement, apparently because it became obvious that the Game and Fish Commission had no standing to condemn land.
The 60 acres and 520 acre feet of water are included in the total land to be condemned for the reservoir for irrigation purposes. Appellee states that the reservoir would be the same size whether or not recreation was included as a purpose. Appellants do not disagree. The recreational use provision, nevertheless, contemplates that the reservoir would not be drained for irrigation purposes, so that an active fishery would be maintained. The recreational use included in the project contemplates, then, that there will always be at least a 60 acre lake in the reservoir.
The provision for recreation in appellee's project was not put there to benefit fishermen from Colorado and elsewhere. Most likely, appellee's motivation was that it could receive substantial financial assistance from the federal government by providing for recreation. 16 U.S.C.A. § 1004 (1982 Supp.). This is a motivating factor in all major reservoir constructions in the state.
The Watershed Improvement District Act now specifically authorizes the inclusion of recreation purposes in a project. See § 41-8-102, W.S. 1977. At no time did appellee purport to initially condemn for recreational purposes. Recreational purposes were at all times incidental to the principal objective of appellee's project. For these reasons we hold that the condemnation proceedings complied with the Watershed Improvement District Act.

III
Because the power of eminent domain is based on sovereign or public necessity, property taken must be put to a public use. 2 Nichols, Eminent Domain, § 71.1 (3rd Ed.Rev. 1963) Courts make the decision whether a use is public, keeping in mind that the decision should be influenced by local conditions. Rindge Co. v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186 (1923). Courts generally decide whether a use is public by looking at the facts surrounding the subject. Clark v. Nash, 198 U.S. 361, 25 S.Ct. 676, 49 L.Ed. 1085 (1905).
Appellants argue that this project will not benefit the public. They contend that after their 264.68 acres of land are condemned and inundated, there will be less irrigated land than before the taking. While the evidence showed that because of the condemnation action, 264.68 acres will be inundated and taken out of production, the evidence also established that production on other lands in the district will increase and more than make up for the land taken out of production.
Appellants contend that the project does not benefit the public because only a few landowners will benefit. Individual landowners in the Toltec Improvement District will be the principal beneficiaries of the project, but it is not essential that the entire community, nor even any considerable portion, should directly enjoy or participate in any improvement to constitute a public use. Rindge Co. v. County of Los Angeles, supra, 262 U.S. at 707, 43 S.Ct. at 692, 67 L.Ed. at 1192. We said in Grover Irrigation & Land Co. v. Lovella Ditch, Reservoir & Irrigation Co., 21 Wyo. 204, 250, 131 P. 43, 57 (1913), that the taking of land for an irrigation ditch in the western states,
"* * * has been upheld as for a public use, regardless of the number of acres or *1149 distinct tracts or farms to be irrigated or the number of independent owners, such taking being held permissible for the purpose of irrigating land owned by a single individual. [Citations.]"
It follows that under the facts of this case, the taking can be upheld as for a public use if there is some benefit to the public from the taking. There are features in the plan designed to benefit the public. These features are a land treatment measure, which will control erosion and sedimentation rates; flood prevention; 600 fishermen-days annually; attraction of people to other recreation facilities in the area; and help in stabilizing the economy in the community.
Appellants also argue that the project is not economically feasible, which is to say that the project is not cost effective, and that public funds should not be expended on a "loser."[5] They contend that if the project is not economically feasible, then it is not a project for which the right of eminent domain should be exercised. We are precluded, however, from considering the feasibility issue because of res judicata. The federal district court for the District of Wyoming considered this issue and others, and filed its memorandum opinion and judgment dated November 3, 1980 (No. C78-173B), deciding against appellants here.[6]
We considered the doctrine of res judicata in a recent case.
"Res judicata is the term applied to the rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies; and, as to them, it constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. [Citation.] The sum and substance of the whole rule is that a matter once judicially decided is finally decided. [Citation.] It is a doctrine of universal law diffused through every well-regulated system of jurisprudence. It is a public policy principle arising through the necessity and interest of society that there be an end to litigation. [Citation.]" Barrett v. Town of Guernsey, Wyo., 652 P.2d 395, 398 (1982).
The federal district court was a court of competent jurisdiction. Appellants here were plaintiffs and appellee was an intervenor, so that all the parties were involved. Arguably, the cause of action and the subject matter are not entirely identical, because more issues were litigated in federal court than appellants are trying to litigate here. In the case here, appellants' principal reason for contending that the project is not economically feasible is that an incorrect interest or discount rate was used. In the federal case the accuracy of the interest or discount rate was litigated and determined against appellants here. In the federal action appellants here also complained of the inadequacy of an environmental impact statement. In the federal case it was also determined that "satisfactory assurances" had been given that the sponsors of the project would pay the nonfederal share of the project costs.
We hold that the action in the federal district court, because of res judicata, barred the state district court from considering the issue of economic feasibility, and bars this court from considering it. The original pleadings in this case, of course, did not raise the issue of res judicata. By agreement, the condemnation action abated until the judgment was entered in the federal case, which occurred in November, 1980. Thereafter, this case proceeded and the state district court entered its order of taking in February, 1981. We do not know that the state district court mentioned the doctrine of res judicata; however, its application is implicit in the court's order of condemnation.
*1150 In Issue No. III appellants again discuss some of the matters raised in Issues I and II. We have addressed these matters and will not repeat our analysis and resolution of them.

IV
Appellants contend that the jury's compensation award is not supported by competent evidence and is contrary to the evidence. The verdict of the jury was as follows:
"1. We, the jury, find the fair market value of all the land of the Defendants before the condemnation of the easement for Plaintiff's reservoir on February 11, 1981, was: $705,000.
"2. We, the jury, find the fair market value of the land of Defendants after the condemnation on February 11, 1981, was $618,000:
"3. We, the jury find the just compensation to be paid to Defendants is: $87,000."
We said in Continental Pipeline Company v. Irwin Livestock Company, Wyo., 625 P.2d 214, 216 (1981):
"We have held that where there is a partial taking of property, as here, which will result in damages to the remainder not taken, the amount of just compensation to be awarded for that `taken or affected' is determined by application of the `before and after' rule, i.e. just compensation is the difference between the fair market value of the entire parcel before the taking and that after the taking. [Citations.]"
It appears here that the case was tried and submitted to the jury on the correct method of arriving at just compensation. The form of their verdict is also proper. Appellants concede that the appraisers called by appellants and by the appellee were both "qualified as expert witnesses and were competent to opine as to the true value of the property taken."
Appellants' expert witness, Joe Dunford, using a market approach, testified that just compensation should be $140,000. Using an alternative cost approach, he testified that just compensation should be $137,000. Just compensation, in the opinion of appellee's expert witness, John Butler, was $50,164. While the jury award of $87,000 was within the range of testimony, it was not exactly what either of the witnesses had testified to. Appellants apparently urge this court to adopt a rule requiring the jury award to correspond exactly to what a witness testified. We know of no such rule, nor do we think such a rule would be sound.
Appellants do not make it clear whether they are contending that the verdict here should be set aside because of averaging or because it was a quotient verdict. They quote Nichols on Eminent Domain, which addresses both matters:
"* * * Even though within the range of the testimony, if the award represents an averaging of the conflicting appraisals, it is improper. Quotient verdicts have been rejected on the ground that they foreclose consideration of estimates in excess of or below such figure. * * *" 5 Nichols on Eminent Domain, § 17.1[4], pp. 17-24 (1981).
Appellants conjecture that in arriving at its verdict the jury took the difference between Dunford's just compensation figure of $137,000 and subtracted Butler's figure of just compensation of $50,164, then rounded to even figures and came up with $87,000 as just compensation. It does not appear that the jury averaged the three figures of just compensation given by the different appraisers. If the jury had averaged the three figures the result would have been $91,388. If the jury had averaged the highest and lowest figures, the result would have been $93,582.
In true quotient verdicts members of the jury agree in advance that each juror will specify a figure he recommends and all figures will be added together and the sum divided by the number of jurors, and that all jurors are bound to accept the quotient obtained as their verdict. Security Mutual Finance Corporation v. Harris, 288 Ala. 369, 261 So.2d 43 (1972). The basic policy against quotient verdicts is that one or *1151 more jurors, by resorting to extreme figures, could force an unfair verdict. Southern Ry. Co. v. Williams, 113 Ala. 620, 21 So. 328 (1897). On the face of the verdict here there is no indication that it is a quotient verdict, nor is there any evidence to that effect.
This verdict, then, appears to be a compromise. We will not upset a verdict merely because the jury may have compromised, if the verdict was within the range of the testimony and if it appears that the verdict was the jury's true verdict.
"* * * A true verdict is the voluntary conclusion of the jury after deliberate consideration, and it is none the less [sic] a true verdict because the respective jurors may have been liberal in concessions to each other, if conscientiously and freely made. * * *" Southern Ry. Co. v. Williams, supra, 21 So. at 329.

V
Appellants contend that the interest award was improper, and that they were entitled to interest on the $87,000 from February 11, 1981, until April 15, 1982. The record is not clear regarding the sequence of events culminating in the award of interest. The appraisal was filed in August, 1981. The order of award contemplated by Rule 71.1(i), Wyoming Rules of Civil Procedure, was filed on October 22, 1981.[7] The deposit of $73,075 was made before the order of award, since the order recites that $73,075 had been deposited to appellants' credit with the clerk of the district court, which place of deposit was approved by the court. Appellants acknowledged that they were aware of the deposit at the time of the first pretrial conference in September, 1982, at which time they could have withdrawn the deposit and used it any way they desired.
Rule 71.1(i), W.R.C.P., provides:
"Order of award  The district judge, upon filing of the certificate of appraisers under subdivision (h) above, or upon entry of the jury verdict under subdivision (j) below, and upon receiving due proof that such compensation and separate sums * * * have been paid * * * or have been deposited to the credit of such parties in the county treasury, or other place for that purpose approved by the court, shall make and cause to be entered an order describing the real or personal property taken, the compensation ascertained, and the mode of making compensation or deposit thereof as aforesaid. * * * Upon the entry of such order, the plaintiff shall have such rights in the condemned property as are granted to him by the statutes of this state authorizing the exercise of the power of eminent domain by plaintiff and which have been the subject matter of his action."
* * * * * *
Rule 71.1(1), W.R.C.P., provides in part, "* * * Interest shall not accrue as to the sum deposited by the plaintiff from and after the time the deposit becomes available for distribution to the defendant or defendants. * * *" For that reason, appellee cannot be charged interest on the $73,075 which was available to appellants.
Rule 71.1(1), W.R.C.P., further provides, "* * * If the compensation finally awarded to any defendant exceeds the amount which has been paid to him on distribution of the deposit, the court shall enter judgment against him and in favor of the plaintiff for the deficiency. * * *" The jury returned its verdict of $87,000 on January 20, 1982. The amount of the verdict was $13,925 more than the amount deposited by appellee for appellants' benefit. The trial judge then added an award of interest on the $13,925 *1152 deficiency from the date of the jury verdict, January 20, 1982, at the rate of ten percent.
Rule 71.1(1), W.R.C.P., is silent about interest on the deficiency. We believe, however, that interest is proper so that just compensation is complete. We hold that where the jury award exceeds the amount initially deposited to the credit of the condemnee, the condemnee is entitled to interest on the difference between amounts of just compensation fixed at the time of the order of award (time of taking) and later increased by the jury, measured from the date of the order of award. Venable v. Lee, 141 Ga. App. 159, 233 S.E.2d 3 (1977).[8]
Therefore, appellants are entitled to interest on the difference of $13,925 between the award of the appraisers and the amount assessed by the jury, and in this respect the judgment is modified to allow appellants interest on said sum from October 22, 1981, the date of the order of award.
Affirmed as modified.
ROONEY, Chief Justice, dissenting.
I dissent because I believe (1) that the jury award did not compensate appellants for all of that taken, i.e. it did not consider compensation for the taking of appellants' water rights, and (2) that the award was not supported by competent evidence.

I
The only evidence as to value came from two appraisers, one testifying for each side. Each appraised the property for livestock ranch use. They recognized that the land taken had high priority water rights and was irrigated land. They considered the irrigable nature of the land, but they did not consider the value of the water rights in computation of just compensation.
Land should be valued at its highest and best use. Irrigated land has a higher value in most instances than pasture land. The fact that this land was recognized as irrigable and so valued does not mean that the water rights were included in the valuation. Even if land was not irrigated, if it were irrigable and thus have a higher and best use than that to which it was being put, the appraisal should be on the basis of irrigable land, i.e. for the highest and best use. Compensation for irrigated land is not compensation for the water rights. The legislature recognized the distinction in providing authority to move the water rights to another location in event of condemnation. Section 41-3-107, W.S. 1977.
In this instance, neither court nor counsel presented the issue of compensation for the water rights to the jury.[1] Ordinarily, this would cause us to go no further with the issue. However, compensation for the water rights and the impracticability for transferring them surfaced previously in the long judicial examination of this matter, and we said in Associated Enterprises, Inc. v. Toltec Watershed Improvement District, Wyo., 578 P.2d 1359, 1363 (1978) that:
"* * * The requirement under the statutory provisions for condemnation that this impairment must be compensated for in a just manner nullifies any equitable argument on the part of the prior appropriator." (Emphasis added.)
The quotation was in connection with a discussion and ruling on whether or not the reservoir would "impair" appellants' water rights, particularly in view of the legislative *1153 direction in connection with watershed improvement districts that
"Nothing in this act [§§ 41-8-101 to 41-8-126] shall be so construed as to in any manner impair existing water rights, appropriations or priorities." Section 41-8-126, W.S. 1977.
I believe that, having decided that the water rights in this case are a proper subject for condemnation and having made compensation for them one of the grounds for the holding in the first appeal of this case, the statement that they "must be compensated for" should have been complied with when the condemnation was finally accomplished.
"Private property shall not be taken for private use unless by consent of the owner, except for * * * reservoirs * * * nor in any case without due compensation." (Emphasis added.) Article 1, § 32, Wyoming Constitution.
"Private property shall not be taken or damaged for public or private use without just compensation." (Emphasis added.) Article 1, § 33, Wyoming Constitution.

II
The jury award is not founded on valid valuation evidence. As noted, the only evidence of value came from two appraisers, one for each side. Appellants' appraiser, using an animal unit approach to valuation, placed a value on the ranch before the taking at $730,000[2] and after the taking at $590,000[3] resulting in just compensation of $140,000. Appellee's appraiser, using a per acre valuation approach, placed a value on the ranch before taking at $700,500.[4] To reach his after value, he testified to the potential for cabin sites and attributed a benefit value therefrom, resulting in an after value of $650,336 and $50,160 just compensation.[5]
The appraisement by appellee's appraiser was faulty in including a benefit value in his computation inasmuch as his computations were made on a per acre basis. Appellee's condemnation power results from § 41-8-113(a)(iii), W.S. 1977, which directs that it is to be "in the manner provided by law for the condemnation of private property for public use." Thus, the rule of damages applicable to this case is:
"In estimating the compensation for all property actually taken, the true value thereof, at the time of the appraisement, shall be allowed and awarded; and in estimating the compensation for damages occasioned to other portions of the claimant's property, not actually taken, the value of the benefits, or advantages, if any, to such other lands may be deducted therefrom." Section 1-26-203, W.S. 1977.[6]
Under this rule, the benefits can be set off only against the damages to lands of appellants other than that taken  not against the value of the property actually taken for which "the true value thereof * * * shall be allowed and awarded." See 3 Nichols on Eminent Domain §§ 8.6207 and 8.6211[51]; Orgel on Valuation Under the Law of Eminent Domain § 64 (2d ed. 1953); *1154 State Highway Commission v. Rollins, Wyo., 471 P.2d 324 (1970). By allocating value on the basis of acreage taken, as done by appellee's appraiser, benefits cannot be subtracted therefrom under the aforesaid rule of damages. Accordingly, the jury could not properly consider the testimony of appellee's appraiser.
Therefore, the only proper testimony on value before the jury was that of appellants' appraiser. Since the jury did not make an award in conformance therewith or within the scope of the valuation testimony, the jury's award cannot stand. There was no substantial evidence in support of the award.
For one or both of these reasons, I would reverse and remand for a new trial as to the amount of just compensation to be paid to appellants.
NOTES
[*] Became Chief Justice on January 1, 1983.
[**] Chief Justice at time of oral argument.
[1] Under the Watershed Improvement District Act only landowners are entitled to vote in the referendum and their vote is weighted according to the number of acres they own. § 41-8-109, W.S. 1977.
[2] The case here was commenced October 1, 1974; however, proceedings were held in abeyance until the issues raised in the 1978 case were resolved. Associated Enterprises, Inc. v. Toltec Watershed Improvement District, Wyo., 578 P.2d 1359 (1978).
[3] Section 41-3-401(a), W.S. 1977, provides in pertinent part:

"(a) Where the holder of an appropriation of water from a surface, underground or reservoir water source fails, either intentionally or unintentionally, to use the water therefrom for the beneficial purposes for which it was appropriated, whether under an adjudicated or unadjudicated right, during any five (5) successive years, he is considered as having abandoned the water right and shall forfeit all water rights and privileges appurtenant thereto. * * *" See also § 41-3-402(a), W.S. 1977.
[4] Section 41-3-107, W.S. 1977, provides in part:

"(a) The state board of control is hereby authorized, upon the written petition of the owner, or owners of an adjudicated water right, or water rights appurtenant to lands submerged or to be submerged * * * to issue amended certificates of appropriation of water and to change the point of diversion and means of conveyance for such adjudicated appropriations of water for the irrigation of other lands in the state of Wyoming outside of the reservoir basin in lieu of the submerged land, without loss of priority;
* * * * * *
"(c) The owner or owners of lands coming under the provisions of this act [§§ 41-3-107, 41-3-109] may sell or convey such lands submerged or to be submerged by any such reservoir with provisions in the deed or other conveyance that the water rights appurtenant thereto may be detached and transferred as provided herein."
[5] According to the project plan, substantial public funds will be used. Also it is contemplated appellee will obtain a loan from the Farmers Home Administration (Public Law 566, 83rd Congress, 68 Stat. 666, as amended, 16 U.S.C.A., § 1001 et seq. (1982 Supp.)).
[6] That case is presently before the United States Court of Appeals for the Tenth Circuit.
[7] Appellants contend that an order of award was entered February 11, 1981. This order was an "Order Granting Condemnation and Appointing Appraisers." It was not the "Order of Award" contemplated by Rule 71.1(i), W.R.C.P., and could not have been, because the land had not been appraised.
[8] There are cases holding that deposit or tender of an amount eventually found insufficient does not prevent a recovery of interest on the entire amount awarded the owner. Wilmington Housing Authority v. Nos. 401, 403, 405 East Seventh Street, Del., 189 A.2d 421 (1963); and City of Winston-Salem v. Wells, 249 N.C. 148, 105 S.E.2d 435 (1938).
[1] Appellants' counsel mentioned in opening statement that transfer of the water rights was impossible as a practical matter.
[2] Rounded off from $728,750 (275 animal units at $2,650).
[3] Rounded off from $642,836 (225 animal units at $2,625).
[4] Rounded off from $700,511 (on an acreage and use basis).
[5] Appellants' appraiser considered the possibility of cabin sites as too speculative to compute in connection with his animal unit approach to valuation.
[6] This section was repealed by the Wyoming Eminent Domain Act (Ch. 174, S.L. of Wyoming 1981) which became effective July 1, 1981. The repeal will not apply to this case which was then pending. Section 8-1-107, W.S. 1977, provides in pertinent part:

"If a statute is repealed or amended, the repeal or amendment does not affect pending actions, prosecutions or proceedings, civil or criminal. * * *"