TOLTEC WATERSHED IMPROVE-
MENT DISTRICT, Roger Garrett, Don
Robbins, Glen Dunlap and Bill Good-
rich, Appellants (Plaintiffs),

v.

Eldon JOHNSTON, C.W. Burnette, Asso-
ciated Enterprises, Inc., a Wyoming
Corporation and Bard Ranch Compa-
ny, a Wyoming Corporation, Appellees
(Defendants).

No. 85–169.

Supreme Court of Wyoming.

April 9, 1986.

Rehearing Denied May 13, 1986.

Jack R. Gage, of Whitehead, Zunker, Gage, Davidson & Shotwell, Cheyenne, for appellants.

Eric Alden and William R. Jones, of Jones, Jones, Vines & Hunkins, Wheatland, for appellees.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

This appeal results from a summary judgment in favor of appellees in an action for abuse of process, malicious prosecution and tortious interference with a contract. Appellants Toltec Watershed Improvement District, Roger Garrett, Don Robbins, Glen Dunlap and Bill Goodrich (hereinafter collectively referred to as Toltec) filed the action against appellees Eldon Johnston, C.W. Burnette, Associated Enterprises, Inc., and Bard Ranch Company (hereinafter collectively referred to as Associated Enterprises). Appellants raise a number of issues, but since we will affirm the district court, we need only review the summary judgment granted.

This is not the first time these parties have been before us, but we are optimistic that it will be the last. The litigation history between the parties is long and complex, ranging over some fifteen years. In their brief appellants have summarized the case history as follows:

| DATE FILED | NATURE | DISPOSITION | HISTORY AND CITATIONS |
| --- | --- | --- | --- |
| 6–15–70 | Obtain entry to survey. Counterclaim on one man, one vote theory. | Toltec granted relief. Counterclaim denied; appealed to the Wyo. Supreme and U.S. Supreme Court. | 490 P.2d 1069 (Wyo. 1971)<br><br>410 U.S. 743 [93 S.Ct. 1237, 35 L.Ed.2d 675] (1973) |
| 10–1–74 | Condemnation action. | Toltec granted relief. Appealed to Wyo. Supreme Court. | 656 P.2d 1144 (Wyo. 1983) |
| 11–25–74 | Declaratory judgment against State Engineer. | Defendants appealed summary judgment, then abandoned the appeal. | Laramie County Court Doc. 75–269 Wyo. Supreme Court Doc. 4581 |
| 10–7–75 | Administrative action to challenge extension of time to commence construction. | Defendants lost; appealed to Dist. Court and Wyo. Supreme Court. | 578 P.2d 1359 (Wyo. 1978) |
| 9–28–78 | EIS suit in federal court. | Defendants appeal to Tenth Circuit. | 500 F.Supp. 1323 (D.Wyo. 1980) 698 F.2d 1088 (10th Cir. 1983) |

The facts have been set forth in the previous opinions so a lengthy recital is not now necessary. Basically, appellants formed Toltec Watershed Improvement District for the purpose of building a reservoir on lands owned by Associated Enterprises. Associated Enterprises refused access to Toltec for surveying purposes and the first of five lawsuits was brought. Trial resulted in judgment for Toltec, and Associated Enterprises appealed to this court. We affirmed the judgment in *Associated Enterprises, Inc. v. Toltec Watershed Improvement District*, Wyo., 490 P.2d 1069 (1971). Associated Enterprises then appealed the case to the United States

Supreme Court which affirmed the decision, with three justices dissenting in *Associated Enterprises, Inc. v. Toltec Watershed Improvement District*, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973).

The second case commenced in 1974 when Toltec filed a condemnation action against the lands owned by Associated Enterprises. Toltec prevailed and the decision was again appealed to this court. We modified the judgment and affirmed as modified in *Associated Enterprises v. Toltec Watershed Improvement District*, Wyo., 656 P.2d 1144 (1983).

The third case commenced when Associated Enterprises filed a declaratory judgment action against the state engineer, seeking to have the Toltec reservoir permits declared invalid. This action was dismissed by the district court and an appeal perfected to this court. The case was dismissed for want of prosecution. *Associated Enterprises, Inc. and Johnston Fuel Liners, Inc. v. Floyd A. Bishop, State Engineer* (No. 4581, October 30, 1975).

The fourth action began when Associated Enterprises objected to Toltec's request for an extension of time from the state engineer in which to commence construction on the dam. The state engineer approved the extension and Associated Enterprises appealed to the district court which affirmed the decision. Appeal was made to this court and the decision affirmed in *Associated Enterprises, Inc. v. Toltec Watershed Improvement District*, Wyo., 578 P.2d 1359 (1978).

The final action commenced when Associated Enterprises filed suit in the Wyoming Federal District Court against the federal government to compel the preparation of an environmental impact statement (EIS). The relief was granted and an EIS filed. *Johnston v. Davis*, 500 F.Supp. 1323 (D.C. Wyo.1980). The Tenth Circuit affirmed the case but remanded for modification of the EIS in *Johnston v. Davis*, 698 F.2d 1088 (10th Cir.1983).

Before the Tenth Circuit decision and the decision of this court in *Associated Enterprises, Inc. v. Toltec Watershed Improve-*

*ment District*, Wyo., 656 P.2d 1144 (1983) (the second case), Toltec filed the present action alleging abuse of process, malicious prosecution, tortious interference with a contract, and seeking punitive damages. As noted earlier, the trial court granted Associated Enterprises' motion for summary judgment on all issues.

We begin by stating our applicable standards of review. In *Garner v. Hickman*, Wyo., 709 P.2d 407, 410 (1985), we said:

"When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. *Randolph v. Gilpatrick Construction Company, Inc.*, Wyo., 702 P.2d 142 (1985); and *Lane Company v. Busch Development, Inc.*, Wyo., 662 P.2d 419 (1983). A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. *Dudley v. East Ridge Development Company*, Wyo., 694 P.2d 113 (1985). Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of the County of Converse*, Wyo., 697 P.2d 1040 (1985). Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts. *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980)."

## ABUSE OF PROCESS AND MALICIOUS PROSECUTION

The tort of abuse of process is defined thusly:

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of

process." Restatement (Second) of Torts § 682, p. 474 (1977).

"The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Prosser and Keeton, Torts § 121, p. 898 (5th ed., 1985).

In *Foothill Industrial Bank v. Mikkelson,* Wyo., 623 P.2d 748 (1981), this court reversed a judgment granted for abuse of process. In that case, the mortgagors brought action against the mortgagee when the mortgagee accelerated payments on a note after the mortgagors defaulted. We stated that the gravamen of abuse of process lies in the misuse of a court's power to perpetrate injustice. We found there could be no action for abuse of process when the bank foreclosed the note upon default which was its right. We further found that the bank's motive in so doing was immaterial and irrelevant. We quoted with approval the following language:

" 'If the law concerned itself with the motives of parties new complications would be introduced into suits which might seriously obscure their real merits. * * * ' " *Id.,* at 757, quoting *Dickerman v. Northern Trust Company,* 176 U.S. 181, 190, 20 S.Ct. 311, 314, 44 L.Ed. 423 (1900).

Such is in accord with the general principle " * * * that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." Restatement (Second) of Torts § 682, p. 475 (1977). Abuse of process requires that the use of the process be primarily for an immediate purpose other than the purpose designed and intended. See, e.g., *Bosler v. Shuck,* 714 P.2d 1231 (Wyo., 1986).

Similarly, it matters not what the motive might be in instituting prosecution for purposes of malicious prosecution. In the case of *Consumers Filling Station Company v. Durante,* 79 Wyo. 237, 333 P.2d 691, 694 (1958), this court set forth the following elements necessary to sustain a cause of action for malicious prosecution:

"(1) The institution or continuation of original judicial proceedings, either criminal or civil;

"(2) Such proceedings having been by or at the instance of the defendant (such as *Durante* in this case);

"(3) The termination of such proceedings in favor of the plaintiff (such as *Consumers* in this case);

"(4) Malice instituting the proceedings;

"(5) Want of probable cause; and

"(6) The suffering of injury or damage as a result of the action complained of.

"If any one of these elements is lacking, the result is fatal to the action. [Citation.]"

The court went on to state that if probable cause in instituting the action is shown, such precludes an action for malicious prosecution, irrespective of the motive:

" 'Where it appears that there was probable cause to institute the original proceeding such fact constitutes a complete and absolute defense or bar to an action of malicious prosecution, irrespective of the motive in instituting the prosecution, or of a conspiracy. * * * ' " Id., 333 P.2d at 695, quoting 54 C.J.S. Malicious Prosecution § 18.

The difference between the torts of malicious prosecution and abuse of process has been stated by one authority as follows:

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.

The purpose for which the process is used, once it is issued, is the only thing of importance. Consequently in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause. It is often said that proof of 'malice' is required; but it seems well settled that except on the issue of punitive damages, this does not mean spite or ill will, or anything other than the improper purpose itself for which the process is used, and that even a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created." Prosser and Keeton, Torts § 121, p. 897 (5th ed. 1985).

We discussed certain policy considerations of malicious prosecution and upheld a judgment for such in *Cates v. Eddy*, Wyo., 669 P.2d 912, 917–918 (1983):

"On the one hand, it is stated that malicious prosecution actions are not favored in the law because of a public policy in favor of uncovering and prosecuting crime. Large tort judgments against well-meaning individuals, acting honestly and in good faith, might seriously inhibit those attempting to perform what they believe a civic duty. A policy that discourages citizens from reporting crime or aiding in prosecution would be undesirable and detrimental to society in general.

"On the other hand, it is generally accepted that for every wrong there should be a right. That also is necessary to an orderly society, for the alternative is that the party wronged seek his own redress. Experience has shown that remedy to be unacceptable. Thus, one who is subjected to unjustifiable criminal or civil proceedings because of spite or malice, which result in damage and injury, should recover compensation for that loss.

"The competing policy considerations are nicely balanced; and requiring malice and lack of probable cause as necessary elements to an action for malicious prosecution affords adequate protection to the first policy and restriction upon the second. Allowing a malicious prosecution action where the proceeding was 'initiated, caused or procured' by the defendant is fair. It will not be destructive of either of the stated policies."

See also, *Seamster v. Rumph*, Wyo., 698 P.2d 103 (1985), wherein we sustained a summary judgment granted in favor of a defendant for malicious prosecution finding the plaintiff had not established lack of probable cause in the previous criminal proceeding.

In the present case, it is significant to note that Toltec relies upon two sources to resist Associated Enterprises' motion for summary judgment: their second amended complaint and discovery completed to date. Such discovery refers to documents filed after the summary judgment hearing in the district court. Since the district court did not have such documents before it, we cannot consider such documents in our review since we must examine the judgment in the same light as the district court and use the same materials. Indeed, such documents were stricken from the record by order of this court; therefore, such documents cannot be considered in Toltec's attempt to oppose the summary judgment.

Rule 56(c), Wyoming Rules of Civil Procedure, provides:

"The motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone al-

though there is a genuine issue as to the amount of damages."

■ The essence of Toltec's claim for abuse of process and malicious prosecution is that Associated Enterprises acted out of an improper motive. While it appears that Associated Enterprises' motives were anything but virtuous, we cannot find such motives to be sufficient to sustain an action for abuse of process or malicious prosecution. We agree with the trial court's order wherein it stated:

"The Court finds that in each of the Defendants' actions complained of in this matter that the Defendants were well within their rights in taking those actions and that they had probable cause to bring those questions before the Courts and that none of the various items of process listed by the Plaintiff were put to any use other than that contemplated at law."

We find summary judgment was proper on Toltec's claims of abuse of process and malicious prosecution.

## TORTIOUS INTERFERENCE WITH A CONTRACT

Toltec also claims summary judgment was improper with regard to their claim against Associated Enterprises for tortious interference with a contract. Toltec contends Associated Enterprises tortiously interfered with the contract between Toltec and the Soil Conservation Service (SCS) due to the continued course of litigation. Toltec further contends that such interference damaged them through the increased cost of the land to be condemned, increased dam construction costs and attorney's fees.

To oppose Associated Enterprises' motions for summary judgment, Toltec filed a memorandum that contains numerous references to letters not made part of the record until after the district court ruled on the summary judgment motions. We have already stated that we cannot consider any material not before the trial court. We recently upheld a summary judgment for tortious interference with a contract in *Spurlock v. Ely*, Wyo., 707 P.2d 188 (1985).

In that case we found that appellant had not properly made all materials, upon which he relied to oppose the summary judgment, a part of the record.

Toltec also relies on a letter dated September 2, 1977, from B.D. Turner, Jr., of the SCS to Kim Cannon, one of Associated Enterprises' attorneys. That letter is in response to a letter from Kim Cannon requesting federal funding for the dam be withdrawn. The Turner letter merely states that the SCS reviewed the questions raised by Cannon and found the funding should not be withdrawn. The letter does not show that Associated Enterprises' interest or motive was somehow improper, and is not helpful in Toltec's claim of tortious interference with a contract.

In further support of their opposition to summary judgment, Toltec filed an affidavit from one of their attorneys. Such affidavit merely states that the contract between Toltec and the SCS had to be negotiated three separate times due to the ongoing litigation between the parties.

■ Tortious interference with a contract is defined as:

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Restatement (Second) of Torts § 766, p. 7 (1979).

In an interference with contract action, *Board of Trustees of Weston County School District No. 1 v. Holso*, Wyo., 584 P.2d 1009, 1016–1017 (1978), we said that the necessary elements of proof were:

"(1) the existence of a valid contractual relationship or business expectancy;

"(2) knowledge of the relationship or expectancy on the part of the interferor;

"(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and

"(4) resultant damage to the party whose relationship or expectancy has been disrupted."

■ Factors to be considered for the action are listed as follows:

"In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

"(a) the nature of the actor's conduct,

"(b) the actor's motive,

"(c) the interests of the other with which the actor's conduct interferes,

"(d) the interests sought to be advanced by the actor,

"(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

"(f) the proximity or remoteness of the actor's conduct to the interference and

"(g) the relations between the parties." Restatement (Second) of Torts § 766, pp. 26–27 (1979).

We recognized the action in *Wartensleben v. Willey*, Wyo., 415 P.2d 613 (1966), where we upheld a judgment for tortious interference with a contract when the defendant interfered with prospective contractual relations without justification. In that case we said:

"Appellant's starting premise—that the intentional interference with contractual relations, without justification, creates liability for the harm thereby caused— brings no material disagreement from us. See 4 Restatement, Torts, § 766, p. 49 (1939). But we still must concern ourselves with a determination as to whether defendants were reasonably justified in doing what they did to prevent the establishment of the feed lot on Wartensleben's land, adjacent to Willey.

"On the subject of justification, it is set out in 4 Restatement, Torts, § 773, p. 87 (1939), that:

" 'One is privileged purposely to cause another not to perform a contract, or enter into or continue a business rela- tion, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction.' "

"In the annotation on the subject of liability for procuring breach of contract in 26 A.L.R.2d 1227, 1234, it is indicated authority supports the rule that a party to a contract has a right of action against a person who has procured a breach of such contact by the other party thereto 'otherwise than in the legitimate exercise of his own rights.' " Id., at 614.

We again upheld a judgment for tortious interference with a contract in *Martin v. Wing*, Wyo., 667 P.2d 1159 (1983), finding the trial court was correct in determining the defendants had interfered with the plaintiffs' prospective sale of their real property.

■ It is generally recognized in Wyoming that malicious interference need not be shown. *Martin v. Wing*, supra. But one who interferes with a contract asserting a bona fide claim in good faith is not liable for tortious interference with a contract:

"One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." Restatement (Second) of Torts § 773, p. 52 (1979).

Another authority has stated:

"The defendant is also permitted to interfere with another's contractual relations to protect his own present existing economic interests, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded. * * * "

Prosser and Keeton, Law of Torts § 129, p. 986 (5th ed. 1984).

The basis of the problem between the parties is that Associated Enterprises did not wish to have its lands condemned for the Toltec dam. Therefore, it appears that Associated Enterprises was trying to protect its lands, which is its right. In light of such, it is difficult to find error in the summary judgment granted with respect to the tortious interference with a contract claim when Associated Enterprises was trying to defend its property interest. Furthermore, it is noted that the contract which was the subject of the alleged tortious interference, was eventually entered into by Toltec and the SCS, and the funding for the dam approved.

We think the summary judgment granted by the trial court in this case was correct. It is speculative for us to say how the result might have changed if all materials upon which Toltec relies to oppose the summary judgment had been properly made a part of the record. We find summary judgment was proper in this case.

Affirmed.

URBIGKIT, Justice, dissenting.

Differing from the majority approval of the trial court summary judgment, I respectfully dissent.

As suitably stated by Judge Younger in *500 West 174 Street v. Vasquez,* 67 Misc.2d 993, 325 N.Y.S.2d 256, 257 (1971):

"Perhaps chief among the assurances which together make up the social contract is the judiciary's promise never to close the courthouse doors. Through them should walk unhindered every citizen with a dispute to settle or a grievance to air. So it is that we hesitate to declare unjust the very appeal to justice. Nevertheless, given a case where someone has deliberately misused the processes of law, a judge must step in to vindicate those processes by imposing a sanction upon the one who has abused them. *This is such a case.*" (Emphasis added.)

Preliminarily, I have no difference with the standard enunciated by the court for application of summary judgment, and, consequently, with the standard as defined, the question is whether the appellees, as the *movants, have met their "burden* of proving the nonexistence of a genuine issue of material fact" (emphasis added), *Garner v. Hickman,* Wyo., 709 P.2d 407, 410 (1985), or as a matter of law that the complaint fails to "state a claim upon which relief can be granted." Rule 12(b)(6), W.R.C.P.

"* * * In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed, and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." *Corwin v. Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 94 Cal.Rptr. 785, 790, 484 P.2d 953, 958 (1971).

The court factually misapplies the stated rule in its opinion by asserting that

"* * * Toltec relies upon two sources to resist Associated Enterprises' motion for summary judgment: their second amended complaint and discovery completed to date." 717 P.2d at 812.

Appellees filed two affidavits in support of the originally denied motion, and appellant filed a resistive motion with affidavit. Additionally filed were attachments to appellants' affidavits and answers to the interrogatories signed by appellants upon submission of appellee. A further resistive affidavit signed by the prior litigative attorney, Fred Phifer, was filed as an attachment with an exhaustive responsive brief, on April 15, 1985.

Essentially, the appellees' record as created to meet their burden of the Garner summary-judgment rule was addressed by those two substantially identical affidavits dated May 3, 1983, contending for absence of bad faith and advice of counsel which supported the first motion for summary judgment dated May 10, 1983. In resistance, appellants filed the two affidavits of

Fred Phifer, as their prior attorney, contending for bad faith and specifically stating:

> "It is clear from the 13 year history of litigation in this matter which is ongoing that the Defendants in this action have tried every possible means to delay and to drive up the costs so that the project is no longer economical and I have repeatedly heard counsel for the Defendants make those statements in questions to witnesses, arguments to the Court, and in writing."

Attached to the first Phifer affidavit was deposition testimony of one of the appellees that in top filing a reservoir application he was "just playing." Based on those conflicting affidavits, the first trial judge denied summary judgment in a letter of July 15, 1983, by stating:

> "The moving party, in this case the Defendants, have the burden of proving the absence of any genuine issue of material fact. There appears to be a material issue of fact as to the Defendants' purpose for bringing and continuing the various actions complained of by the Plaintiff. There is a material issue of fact as to whether the Defendants Eldon Johnston and C.W. Burnette willfully participated in alleged tortious acts of Associated Enterprises, Inc., and Bard Ranch Company. There is also a material issue of fact as to whether the litigation complained of has terminated, and if so when, and whether or not the statute of limitations has run. There is also a material issue of fact as to whether or not there was in existence a valid contract between Plaintiff and the Soil Conservation Service, or if but for the actions of the Defendant there would or would not have been in existence a valid contract."

The only other evidentiary instrument of record is appellants' answers to defendants' interrogatories as filed with defendants' motion for order compelling discovery on March 7, 1985, wherein it is said inter alia:

> " * * * The collateral purpose was to use the legal processes to delay construction of the reservoir until it would no longer be economically feasible to construct."
> " * * * The legal process was misapplied and abused by perverting the Court system to accomplish a collateral purpose not contemplated by law. * * *

> *      *      *      *      *      *

> "To accomplish the collateral purpose of delaying the building of the Toltec Reservoir until it was no longer economically feasible to build."

For this sixth lawsuit between the same parties in the past some 15 years, as involving the same general subject, the pathway in this (final) lawsuit is interesting and illustrative.

Separate from their earlier venue motion as supported with other affidavits, appellees filed nine consecutive motions to dismiss or for summary judgment in this action.

On May 11, 1983, the first motion, a motion for summary judgment, was filed as then supported by two affidavits executed by defendants which in substantive terms were identical. A resistive affidavit as executed by appellants' prior attorney was also filed, with a denial decision and accompanying order thereafter entered by District Judge George Sawyer on August 3, 1983.

Never deterred, defendants, appellees herein, next filed a motion to dismiss on October 25, 1984, as relating to corporate plaintiff, on the basis that the entity as a governmental entity was not authorized by law to sue or be sued, with order of denial dated November 29, 1984, then following as entered by District Judge John T. Langdon, who succeeded retired Judge George Sawyer. That motion denial was then followed by defendants' motion for summary judgment against the individual plaintiffs on February 6, 1985. The pace then escalated and defendants filed a motion for summary judgment on the third cause of action on February 21, 1985; a motion dismissing plaintiffs' complaint against defendants Eldon Johnston and C.W. Burnette, March 15, 1985; a motion for sum-

mary judgment in favor of defendants and against all plaintiffs on the first cause of action, not date-stamped, but about March 19, 1985; a motion for summary judgment on plaintiffs' claim for malicious prosecution, March 21, 1985; defendants' motion for summary judgment on claims of plaintiff Toltec Watershed Improvement District for malicious prosecution, March 21, 1985; a motion for partial summary judgment on claims barred by the statute of limitations, March 21, 1985; and finally the last then pending motion, a motion to dismiss the claims of plaintiff Toltec Watershed Improvement District, April 16, 1985.

Supporting and opposing briefs embrace a significant portion of the four-volume record of 555 pages.

Summary judgment was granted to defendants as a ruling on the seven remaining motions of the total of nine as filed. To be repetitive, the only factual material presented in support of the various motions was reference to the five prior lawsuits by brief and plaintiffs' answer to defendants' interrogatories as made a matter of record by attachment to the brief, and the two affidavits filed by defendants as submitted with the originally filed motion for summary judgment of 1983. Depositions and other discovery material which were developed through the litigative process are not a part of the record, and consequently were not available to the district court nor included in the record provided on this appeal. Correspondence derived from the files of prior counsel for appellees as late filed for the record was rejected by this court.

### Abuse of Process

A careful review of the evidentiary record would certainly afford recognition of the factual conflict in conjunction with the affidavits of defendants, plaintiffs' answering affidavit, and plaintiffs' answers to interrogatories. The defendants' affidavits, filed long before the second amended complaint, contended for advice-of-counsel defense and good-heart conduct as fair litigative effort in a conclusionary context.

The affidavit of prior counsel for plaintiffs averred by similarly conclusionary affidavit to the contrary. The final factual material available to challenge against the second amended complaint was the answers to interrogatories, which certainly would provide no support to this court's decision by any assertion that a factual dispute did not exist. *Kover v. Hufsmith*, Wyo., 496 P.2d 908 (1972); *Corwin v. Los Angeles Newspaper Service Bureau, Inc.*, supra; Note, *Proper and Improper Summary Judgment Cases*, 12 Wyo.L.J. 289 (1957–58). See second motion consideration in *Greaser v. Williams*, Wyo., 703 P.2d 327 (1985).

Finally, the case at the present juncture evidentially contemplates the judicially noticed results of five prior lawsuits. Nothing in the nature of appellees' successes in those proceedings should afford a factual basis to dispute the allegations of appellants' second amended complaint as is realistically unchallenged by facts of record at the present state of this record. Consequently, this case empirically comes to decision as a motion to dismiss on a contravention of an inadequately pleaded complaint. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975); *LeGrande v. Misner*, Wyo., 490 P.2d 1252 (1971). *However, this court presently postures its affirmation on summary judgment and not any insufficiency of the original, first, or second amended complaint to state a claim upon which relief can be granted.*

The majority critique the responsive material filed by appellants to defend the motion for summary judgment, but do not establish any facts which were duly put before the court by appellees to originally support their motions. It almost seems as if there is a presumption of motion validity, and that the obligation to disprove as an affirmative burden rests with the appellant. That is clearly not the law, and is specifically covered by the mutual citation of *Garner v. Hickman*, supra, as this court's latest word on the province of entry of summary judgment.

It is the second amended complaint against which the motions to dismiss and

for summary judgment were most recently postured, and it is the text of that document which would have been considered in the province of insufficiency, considering that at an earlier time the first complaint had withstood a similar motion as supported by the same affidavits, if the case now assumes a Rule 56, W.R.C.P. status. See *Torrey v. Twiford*, Wyo., 713 P.2d 1160 (1986); *Kimbley v. City of Green River*, Wyo., 642 P.2d 443 (1982).

This court asserts that the involvement of improper motive is not sufficient "to sustain an action for abuse of process or malicious prosecution," and then affirms summary judgment where there is a conflict of fact. It would appear that this court confuses sufficiency of the trial evidence for judgment with pleading sufficiency for defense to a motion to dismiss or for summary judgment with evidentiary conflict of record. *Torrey v. Twiford*, supra. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issue of Material Fact*, 99 F.R.D. 465.

The interrelationship of processes utilized and litigant motives occupied an intrinsic involvement within the entire scenario upon which plaintiffs sought to plead a viable claim under their presented legal theories.

Quoting from the second amended complaint:

"Throughout this entire course of extended and expensive litigation the Defendants have individually and collectively been motivated only by a desire to *delay commencement of construction of the reservoir in order that construction costs would rise to the point where construction of the Toltec Reservoir was economically impractical* and the members of the Plaintiff District would become discouraged and give up the project. The Defendants have sought this result because they could not legally block the construction of the reservoir under Wyoming State law and they have carried on a concerted and ongoing program of attempting to do indirectly what

they could not do directly." (Emphasis added.)

And further said as to abuse of process: " * * * [A]llege that the Defendants singly and in concert with one another and jointly and severally have undertaken a course of action which constitutes an abuse of process in that they have used the process of the State and Federal Judiciary for the improper purpose of delay."

As to a second cause of action: " * * * [T]hat the Defendants singly and in concert with one another and jointly and severally have undertaken acts which constitute malicious prosecution * * *."

With reference to tortious interference with the contract: " * * * [T]hat the Defendants singly and in concert with one another and jointly and severally have undertaken actions which constituted tortious interference with the contract between the Plaintiffs, the Soil Conservation Service and the Farmers Home Administration * * *."

Generally, as to a fourth cause of action: " * * * [T]hat the Defendants singly and in concert with one another and jointly and severally have undertaken intentionally, and with willful and wanton disregard for the precious time of the State and Federal Judicial system and the damages to the Plaintiffs, a course of action to accomplish indirectly and by deceitful and devious acts those things which they could not accomplish legally * * *."

This court misses the point of the lawsuit which, whether provable or not as might have later been questioned in proof, was that defendants knew that they could not legally defeat the reservoir building efforts of the plaintiffs, but adopted a concerted course of litigative appeals to the state and federal courts, plus a course of general harassment to attempt to delay the project for the purpose of increasing the cost of the project so that it would be financially impractical to build the project and to eventually discourage the plaintiffs from proceeding. This conduct by the defendants

was contendably taken in the face of the asserted legal reality that they could not legally block the project, which effort then constituted a willful and wanton use of the judicial system to accomplish indirectly, by litigation and appeals, what they could not accomplish directly on the merits of their legal position. The success of the intended delay is demonstrated by the years of continued litigation.

This structure of the litigation brings the issues forcefully to test. The conception afforded by this court by eliminating intent of an ulterior purpose as a factor, destroys the legal theories for recovery by permitting any and all use of the processes without regard for motive or intent. It is in concern about this denomination of Wyoming law as accepting legality of the process used as a defense no matter how misused, that this dissent is now postured.

Surely one's use of continued legal processes can be carried to the juncture where liability for misuse does result. *Cates v. Eddy*, Wyo., 669 P.2d 912 (1983), is totally contrary in philosophy and result to the path chosen today by this court. In *Eddy*, the defendant was accused of mailing a check signed by his co-officer to pay a due bill, with the alleged motive and assumption that the check would not clear and the co-officer, in refusing to pay or otherwise clear the check, would then later be charged with an insufficient-funds check. "The acts were intentional, deliberate and malicious." *Id.* at 919. See also, *Bosler v. Shuck*, 714 P.2d 1231 (1986). Motive was everything in trial processes and appellant affirmance. Bad heart was everything in the conceptualization of the decisional status. Certainly, proof is possible that the extended scope of time and process involved in the five lawsuits was initiated, caused, or procured in significant fact by actions of appellees in order to delay to economic unviability.

It is noteworthy that instead of nine motions to avoid trial, plus a tenth on venue, if this case had been submitted for resolution to early trial, invested legal effort would have been singularly less and a trial fact resolution would then have occurred. At the same time, evidence and argument could have been presented to the jury as the fact finder in order to determine whether a proper lawsuit was adequately proved to justify recovery or require denial by defendants' judgment. If it is to be said that in any litigative activity the circumstance of requiring five lawsuits is not material to the existence of an actionable tort, then how many lawsuits are actually required for proper claim for retributory recovery by the other litigant? Docket clearing should first start with the abusive user. Certainly before summary judgment is justified in this case, more conclusionary evidence by the mover is required than is afforded by the documentation available from the present record.

Nothing in prior Wyoming law affords precedent for the conclusion of this court in a case encompassing a course of action involving five lawsuits through 13 years.

What we have under the status of this case is a continued process of conduct, which stands admitted in the context of the evidentiary status available for a motion to dismiss or summary-judgment action, wherein the effort is directed to delay for a sufficient period of time to destroy the economic viability of a legal and proper project.[1]

The gravamen of the 13-year five-case litigative activity as now encompassed in the complaint, affidavits, and answers to interrogatories of plaintiffs in this case is the contended use by defendants of time and inflation in order to deny project accomplishment after defeat in the originally appropriate resistive litigative efforts in the main proceedings. This I would find to be submissible to the jury for factual deter-

---

1. This is the subject of abusive pleadings that has been addressed by amendment to Rules 7 and 11, F.R.C.P. See Walker, *The Other 1983 Amendments to the Federal Rules of Civil Proce-* *dure,* 20 Wake Forest L.Rev. 819, 821 (1984). See also Symposium, *Amended Rule 11 of the Federal Rules of Civil Procedure: How Go the Best Laid Plans?,* LIV Fordham L.Rev. 1 (1985).

mination, as a contended perverted use of the legal system to specifically fit within the comment of the Restatement of the Law, Torts 2d § 682, p. 474:

"General principle

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

"Comment:

"a. The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section."

When Mr. Johnson, one of the present appellees, once testified, "I was just playing," in regard to one of the multi-faceted efforts to inhibit the project, he aptly recognized the entire litigative adventure in its 13-year history, and better so if only two words had been added, "I was just playing [for time]," as when additionally he said, "Yes, I just was having some fun."

At the pleading stage presently manifested as invoking a motion to dismiss or sum-

mary judgment, I would submit that the economic cost at some point could be at the expense of the litigant, which is really what abuse of process in its classical sense is all about. Present argument to deny that responsibility, while resourceful, is wholly unpersuasive in technical application.

Toltec has alleged abuse of process, malicious prosecution and tortious interference with contract. The decision of this court is particularly troublesome in that intent and purpose are not distinguished as differently applied to abuse of process and malicious prosecution.[2] The majority opinion does not identify the source from which it draws the contours of the rule it announces today; consequently intent does not appear to be a likely candidate.

Improper motive and consequent improper usage are the essence of abuse of process. *Moore v. Michigan National Bank,* 368 Mich. 71, 117 N.W.2d 105, 1 A.L.R.3d 948 (1962).

"* * * The gist of that tort is 'misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish.' Prosser, Torts, p. 876 (3d ed. 1964). In short, it must appear that the defendant caused process to issue with an ulterior motive and that, apart from motive, he has acted so improperly as to require the conclusion that there has been 'a perversion of the process.' [Citation.]" *500 West 174 Street v. Vasquez,* supra, 325 N.Y.S.2d at 258.

The court correctly defined the general scope of abuse of process in *Foothill Industrial Bank v. Mikkelson,* Wyo., 623 P.2d 748 (1981), wherein it referenced several of the leading cases on the subject, including *Younger v. Solomon,* 38 Cal. App.3d 289, 113 Cal.Rptr. 113 (1974); *Barquis v. Merchants Collection Association*

---

**2.** "An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued. Generally, in an action for abuse of process it is not in law essential that the process should have been wrongfully issued, or that it should have been issued maliciously or without probable cause, and consequently, it is immaterial whether such process has or has not been discharged, but rather, it is sufficient that the one party has wilfully abused the process, after its issuance, to the damage of the other." Annot., 1 A.L.R.3d 953, When Statute of Limitations Begins to Run Against Action For Abuse of Process, at 953 n. 5.

*of Oakland, Inc.,* 7 Cal.3d 94, 101 Cal.Rptr. 745, 496 P.2d 817, 824 n. 4 (1972); *Meadows v. Bakersfield Savings & Loan Association,* 250 Cal.App.2d 749, 59 Cal.Rptr. 34 (1967).

In this present decision, however, this court does exactly what it contended to avoid in *Foothill:*

> " * * * Looking at the pleadings in evidence in a liberal light, that is, not attempting to restrict the proof to some narrow and precise categorization of the alleged tort * * *." 623 P.2d at 757.
>
> "It has been stated that the elements vital to an action for abuse of process are not clearly defined. Briefly stated, the elements of the tort are a willful intent, or ulterior, or wrongful purpose, and an act constituting misapplication of the process." 72 C.J.S. Process § 120, p. 1189.
>
> "The action for malicious prosecution, whether it be permitted for criminal or civil proceedings, has failed to provide a remedy for a group of cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed. In such cases a tort action has been developed for what is called abuse of process." Prosser and Keeton on Torts § 121, Abuse of Process, p. 897.

The essence of the abuse of process is *ulterior purpose. Barquis v. Merchants Collection Association of Oakland,* supra, 101 Cal.Rptr. at 745, 496 P.2d at 817. The allegations in the case directly before this court contend for the ulterior purpose of reversing a prior court decision by time and inflation imposition. Paraphrased, it is "If you do not win by litigating the first time, continue to litigate and you may ultimately win anyway." In this regard, we are reminded of John Spriggs in the Clarissa Mines litigation, *Tibbals v. Keys,* 40 Wyo. 524, 281 P. 190 (1929); *Tibbals v. Graham,*

50 Wyo. 277, 61 P.2d 279 (1936); *Tibbals v. Graham,* 55 Wyo. 169, 97 P.2d 673 (1940); *State Board of Law Examiners v. Spriggs,* 61 Wyo. 70, 155 P.2d 285, cert. denied 325 U.S. 886, 65 S.Ct. 1571, 89 L.Ed. 2001 (1945).[3]

The ultimate-motive factor is replete with case-law support.

By any critique of the record now before us, the ulterior motive was to cause economic abandonment after adverse litigative result. See *Brault v. Smith,* Mont., 679 P.2d 236 (1984).

> " * * * The subpoenas here were regularly issued process, defendants were motivated by an intent to harass and to injure, and the refusal to comply with a reasonable request to stagger the appearances was sufficient to support an inference that the process was being perverted to inflict economic harm on the school district.
>
> "While it is true that public policy mandates free access to the courts for redress of wrongs * * * and our adversarial system cannot function without zealous advocacy, it is also true that legal procedure must be utilized in a manner consonant with the purpose for which that procedure was designed. Where process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party." *Board of Education of Farmingdale Union Free School District v. Farmingdale Classroom Teachers Association, Inc.,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 642–43, 343 N.E.2d 278, 283 (1975).
>
> "The tort of abuse of process does not require a showing that the plaintiff was successful in the prior action. This is so because the basis of the tort lies in the use of the process to gain a collateral objective, the accomplishment of which the process in question was not intended to secure. It is irrelevant whether rea-

---

**3.** That litigation had a different result, with ultimate suspension of the attorney from the practice of law.

sonable grounds existed for the use of the process or what the eventual disposition of the action was. It is the misuse of the legitimate process which is of concern." *Pagliarulo v. Pagliarulo*, 30 A.D.2d 840, 293 N.Y.S.2d 13, 15 (1968).

Abuse of process is not a novel or untested theory for recovery for inappropriate conduct. The Court of Appeals of New York spoke to the subject in *Dean v. Kochendorfer*, 237 N.Y. 384, 143 N.E. 229, 231 (1924), with the following rule stated:

" * * * The gist of the action for abuse of process lies in the improper use of process after it is issued. To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough."

" * * * 'The common-law action for abusing legal process is confined to a use of process for the purpose of compelling the defendant to do some collateral thing which he could not lawfully be compelled to do.' *Johnson v. Reed*, 136 Mass. 421." *Dishaw v. Wadleigh*, 15 App.Div. 205, 44 N.Y.S. 207, 209 (1897).

"In this day, it should make no difference what an action may be called. The question is whether the facts stated show a wrong and injury to the plaintiff by the defendant for which he is entitled to redress. It would be intolerable if the law afforded no remedy for a deliberate and successful cheat, enforced and carried out by the abuse of legal process, whereby the plaintiff was damaged and the defendant profited unjustly." *Gonsouland v. Rosomano*, 100 C.C.A. 97, 176 F. 481, 487 (5th Cir.1910).

See *Hopper v. Drysdale*, 524 F.Supp. 1039 (D.Mont.1981); *Twyford v. Twyford*, 63 Cal.App.3d 916, 134 Cal.Rptr. 145 (1976); *Younger v. Solomon*, supra; *Golden v. Dungan*, 20 Cal.App.3d 295, 97 Cal.Rptr. 577 (1971), with extensive citations therein recited; *Tellefsen v. Key System Transit Lines*, 198 Cal.App.2d 611, 17 Cal.Rptr. 919 (1961); *Tranchina v. Arcinas*, 78 Cal. App.2d 522, 178 P.2d 65 (1947); *Templeton Feed and Grain v. Ralston Purina Company*, 69 Cal.2d 461, 72 Cal.Rptr. 344, 446

P.2d 152 (1968); *Moffett v. Commerce Trust Company*, Mo., 283 S.W.2d 591 (1955), *cert. denied* 350 U.S. 996, 76 S.Ct. 547, 100 L.Ed. 861, *reh. denied* 351 U.S. 928, 76 S.Ct. 778, 100 L.Ed. 1458 (1956); *White v. Scarritt*, 341 Mo. 1004, 111 S.W.2d 18 (1937); *Nevada Credit Rating Bureau, Inc. v. Williams*, 88 Nev. 601, 503 P.2d 9, 56 A.L.R.3d 483 (1972); *Amabello v. Colonial Motors*, 117 N.H. 556, 374 A.2d 1182 (1977); *Farmers Gin Company v. Ward*, 73 N.M. 405, 389 P.2d 9 (1964); *Ginsberg v. Ginsberg*, 84 A.D.2d 573, 443 N.Y.S.2d 439 (1981).

A major authority for a definition of this form of tort is *Spellens v. Spellens*, 49 Cal.2d 210, 317 P.2d 613 (1957), which emphasized and restated the rule from *Kochendorfer*, supra, 143 N.E. at 231, "To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough." See Annot., 80 A.L.R. 580, Action for Abuse of Process.

The appropriate scope of the process was defined in the often-quoted Second Circuit case of *Italian Star Line v. United States Shipping Board Emergency Fleet Corporation*, 53 F.2d 359, 361, 80 A.L.R. 576 (2d Cir.1931):

"It has been observed by the courts on several occasions that the elements vital to an action for abuse of process are not clearly defined, either by the cases or by writers on the subject. [Citations.] The reason apparently is that the term has been used as a label for a variety of dissimilar situations which have in common only the fact that actionable injury was inflicted in connection with the use of judicial process and under circumstances such that the narrowly circumscribed action of malicious prosecution was inapplicable."

See also *Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876, 882, 33 A.L.R.4th 635 (1982):

" * * * By our holding in this case we do not intend to suggest that liability for abuse of process should result from either of the said instances alone [in deference to intense satisfaction derived from awareness of defensive costs]. Liability

should result only when the sense of awareness progresses to a sense of purpose, and, in addition the utilization of the procedure for the purposes for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure. As previously stated, there was evidence presented here of many instances from which a trier of fact could have concluded that the ulterior or collateral purpose of appellant Manfred Wetzel to subject the Nienstedts to excessive litigation expenses was in fact his primary purpose, and that his use of various legal processes was not justified or used for legitimate or reasonably justifiable purposes of advancing appellants' interests in ongoing litigation."

I would hold that the appellants in this case should have the right to attempt to meet this test by evidentiary submission to a jury.

This court has just had occasion to address abuse of process by an opinion currently released, *Bosler v. Shuck,* supra. " 'To show that regularly issued process was perverted to the accomplishment of an improper purpose is enough.' " 714 P.2d at 1234, quoting from *Dean v. Kochendorfer,* supra, 143 N.E. at 231. This court then held "[T]here is no evidence of any affirmative act manifesting a perversion in the process." 714 P.2d at 1235.

In *Bosler,* only one lawsuit was employed, not five, with all the ancillary processes evidenced here. Consequently, that decision gives no comfort to the court in this case in its decision affirming summary judgment when an adequate presentation of evidence was not appropriately afforded.[4] *Bosler* is not, however, consistent with this current case wherein the court now denigrates the significance of improper motive or ulterior purpose.

### Tortious Interference With Contract

This court is also in error in approving the summary disposition of the claim which was premised upon tortious interference with contract.

The dismissal order is affirmed on

"[t]he basis [that] the problem between the parties is that Associated Enterprises did not wish to have its lands condemned for the Toltec dam. Therefore, it appears that Associated Enterprises was trying to protect its lands, which is its right." 717 P.2d at 815.

The error made by this court is that at the time of the conduct for which the present litigation is premised, Toltec had litigated and won the condemnation question, and appellee was thereafter seeking utilization of other processes to reverse the prior judicial defeat. The motive and purpose as addressed by tortious interference

4. A most interesting and thoughtful analysis of the general problem in part addressed in this dissent is revealed in a current law journal article, Ward, *The Movement From Vigorous to Malicious Defense as an Example of the Evolution of Legal Principles,* 47 Mont.L.Rev. 101 (1986). In contending for a kind of classical abuse of process, the author states:

"* * * This article presents malicious defense as an example of a tort in the process of evolution from insignificance to prominence in the legal community. * * * Consternation with dilatory tactics, procedural abuses and motion wars should overcome traditional judicial resistance to change and force the final revolutionary moment of official recognition.

* * * * * *

"* * * The legal community has long held sacred the right of vigorous defense. Vigorous defense is, after all, a fundamental legal right and established defense attorneys can hardly be expected to complacently relinquish a right and strengthen their opponents' arsenals.

"The paradigm, the right of vigorous defense, ages ungracefully. The weight of unresolved problems creates a crisis in the professional community when some defendants unnecessarily prolong litigation, increase expenses and force plaintiffs into premature settlement postures.

* * * * * *

"* * * [T]aken to its logical extreme, vigorous defense allows any feasible tactic, even one that is 'willful, intentional, malicious or fraudulent.' These abuses of the judicial system have created a crisis in the legal community. Courts must draw a line between unrestrained advocacy and the well reasoned pursuit of justice. Vigorous defense must be balanced against the right to bring a lawsuit with minimal delay and expense."

with a contract is the same intent and activity intentionally pursued as addressed by inclusion in the other claims of the Toltec complaint. In practical result, this decision justifies a litigant's continued efforts to reverse decided litigation by description of that "which is their right." That conclusion directly contradicts well-established rules of law, including law of the case, res judicata, and relitigation. *Barrett v. Town of Guernsey,* Wyo., 652 P.2d 395 (1982); *Roush v. Roush,* Wyo., 589 P.2d 841 (1979); *Huggins v. Winn-Dixie Greenville, Inc.,* 249 S.C. 206, 153 S.E.2d 693, 27 A.L.R.3d 1195 (1967). Cf. *Quealy Land & Livestock Co. v. George,* 51 Wyo. 93, 63 P.2d 802, *reh. denied,* 51 Wyo. 93, 66 P.2d 1045 (1937); *Middlesex Concrete Products and Excavating Corporation v. Carteret Industrial Association,* 37 N.J. 507, 181 A.2d 774 (1962); 5 Am.Jur.2d Appeal and Error § 744, p. 188.

### Third Stage Summary Judgment

The summary and misapplied assumptions of this court as to what the facts are *in this record* for determination of the case by summary judgment require re-emphasis and re-analysis as to both abuse and process and interference with the contract. With this court's reliance on summary judgment and not insufficiency of pleading for decision, affidavits and evidentiary status become primary.

To obviate question factually as to what occurred practically as to both issues, a review of the pleadings is now required for response in this dissent.

The complaint was filed September 17, 1982, as first amended before answer, and then answered in October, 1982. Defendants objected to venue. That issue, after contest, was resolved by transfer of the case to another county in February, 1983. This ended stage one of the litigation.

Stage two of this lawsuit was then pursued and completed by general motion for summary judgment filed May 10, 1983, supported by affidavits, resisted by affidavits, with a hearing on May 26, 1983, which resulted in a general denial of the motion by the then trial judge on August 2, 1983, in finding the existence of material issues of fact.

The only other *evidence* of any kind whatsoever which can be considered by this court or was considered by the trial court, on the record, as thereafter supplied, is plaintiffs' answers to interrogatories, signed by them June 21, 1984, which were filed by defendants with a motion to compel discovery on March 7, 1985, and the April 15, 1985, Fred Phifer affidavit.

*This is the only new evidentiary document* filed after denial in trial stage two and before disposition in trial stage three, following the 1985 blizzard of motions. Since defendants filed that discovery document, they are encumbered with any Toltec recitation of information contained in the letters produced but otherwise excluded by other actions of this court.

A complete quotation of that ten-plus-page document is not justified for judicial brevity here, but the summary statement and the footnoted quotations illustrate the factual issue with which certainly no responsive admission by summary-judgment movant exists or would be expected:

"The misuse was in using the legal process to accomplish collateral purpose not contemplated by law. The collateral purpose was to use the legal process to delay construction of the reservoir until it would no longer be economically feasible to construct."[5]

---

5. "The Plaintiffs infer wrongful purpose on the collective acts of defendant during the 12½ years and five lawsuits which were undertaken. The legal process was misapplied and abused by perverting the Court system to accomplish a collateral purpose not contemplated by law. * * *

\* \* \* \* \* \*

"The legal process of determining the constitutionality of the Wyoming Statute under which the Toltec Watershed Improvement District was formed was misapplied to accomplish the collateral purpose of delaying the building of the reservoir until it was no longer economically feasible to build.

\* \* \* \* \* \*

"*Associated v. Bishop* was filed and pursued to the Wyoming Supreme Court for the purpose of delaying the building of the reservoir until it was no longer economically feasible for Toltec to build.

  \*   \*   \*   \*   \*   \*

"Filed October 1, 1975, Associated protested Toltec's request for an extension of time to commence construction of the Toltec reservoir. The State Engineer's grant of extension was appealed to Laramie County District Court and the Wyoming Supreme Court, which affirmed the State Engineer and Judge Joffe on May 18, 1978. This series of legal actions [was] misapplied to accomplish the collateral purpose of delaying the building of the Toltec Reservoir until it was no longer economically feasible to build.

  \*   \*   \*   \*   \*   \*

"The entire series of legal proceedings entitled 'Environmental Impact Statement Litigation', described more fully in Response to Interrogatory 5 [was] misapplied to accomplish the collateral purpose of delaying the building of the Toltec Reservoir until it was no longer economically feasible to build.

  \*   \*   \*   \*   \*   \*

" \* \* \* Defendants' actions in misusing the legal process to prevent construction of the reservoir were unlawful. \* \* \*

"1. *Associated v. Toltec* \* \* \*.

"A. \* \* \* refusal to grant Toltec permission to enter Associated's land to make surveys and foundation studies \* \* \*.

"B. Associated's Answer, filed July 6, 1970, denying Plaintiff is a duly organized Soil Conservation District \* \* \*.

"C. Johnston Fuel Liners Motion To Intervene, filed August 12, 1970, further interfered with Toltec's ability to proceed.

"D. Associated and Johnston Fuel Liners appealed to the Wyoming Supreme Court on November 13, 1970 \* \* \*.

"E. Associated and Johnston's Motion To Stay the Judgment in favor of Toltec, on November 13, 1970 \* \* \*.

"F. Associated and Johnston's Notice of Appeal to the United States Supreme Court \* \*.

"G. Associated and Johnston's request to the Wyoming Supreme Court for a stay pending appeal to the United States Supreme Court \* \* \*.

"H. Associated and Johnston's Motion For Extension of Time for filing a Petition for Rehearing with the Wyoming Supreme Court \* \* \*.

"2. *Toltec v. Associated* \* \* \*.

"A. Defendants' Motion To Join the State of Wyoming, Wyoming Game and Fish, as an indispensable party \* \* \*.

"B. Defendants' Motion To Dismiss, dated October 10, 1974 \* \* \*.

"C. Motion by Defendants for more definite statement \* \* \*.

"D. Defendants' Motion For Continuance \* \* \*.

"E. Defendants' Motion To Dismiss \* \* \*.

"F. Defendants' Motion For Stay of Entry of Order of Taking \* \* \*.

"G. Defendants' Motion For A Continuance \* \* \*.

"H. Defendants' Motion For Dismissal or alternatively to continue the action \* \* \*.

"I. Defendants' Motion For Stay of Entry of Order of Taking \* \* \*.

"J. Kim Cannon's letter dated April 15, 1981 to Fred Phifer denying permission for a professional appraiser for Toltec to go on the ranch \* \* \*.

"K. Defendants' Notice of Appeal \* \* \*.

  \*   \*   \*   \*   \*   \*

"A. Eldon Johnston's subsequent filings on Toltec's filing [top filing reservoir permit] \* \*.

"B. Associated's suit against the State Engineer \* \* \*.

"C. Associated and Johnston's Motion to the Court to certify factual questions to the Board of Control \* \* \*.

"D. Associated and Johnston's Motion to alter the Order granting the State Engineer's Motion To Dismiss \* \* \*.

"E. Defendants' Notice of Appeal \* \* \*.

"F. The Wyoming Supreme Court dismissed the appeal \* \* \* because Associated and Johnston abandoned their appeal \* \* \*.

  \*   \*   \*   \*   \*   \*

"A. Associated and Johnston filed \* \* \* a protest to Toltec's request for an extension of time to commence construction \* \* \* [showing] that the delays in the building of the reservoir had been caused primarily by Associated and Johnston's litigation \* \* \*.

"B. [Appeal of] State Engineer's Order to Laramie County District Court \* \* \*.

"C. Notice of Appeal to the Wyoming Supreme Court \* \* \*.

"All of the above proceedings prevented Toltec from proceeding because a denial of the extension of time would have terminated their rights to the water.

"5. Matt Johnson v. R.M. Davis \* \* \*.

"A. Suit [against Soil Conservation Service] seeking a Declaratory Judgment to require Defendants to prepare an Environmental Impact Statement \* \* \*.

"B. \* \* \* [Appeal] to the Tenth Circuit Court of Appeals \* \* \*.

"C. [A] full hearing [in the District Court] was held on Plaintiffs' Motions requiring the Defendants to prepare a New Environmental Impact Statement \* \* \*."

Further, in answer to questions about intentional interference, the document stated:

"The contract interfered with is the contract between the Soil Conservation Service and the Toltec Watershed Improvement District. An example of interference with the contract is a letter from Henry Burgess to Secretary of Agriculture, Robert Bergland, dated June 13, 1977, requesting that the Department of Agri-

This is the new record created by summary-judgment movement whereby justification for his motion is now requested, after initial denial at an earlier time by another judge. How the evidentiary status for granting the motion for summary judgment is improved is absolutely incomprehensible on this record.

The test for granting summary judgment is to determine whether there is a material issue, and never to decide the material issues that may exist. *Board of County Commissioners of Fremont County v. Memorial Hospital of Natrona County*, Wyo., 682 P.2d 334 (1984); *Kimbley v. City of Green River*, Wyo., 642 P.2d 443 (1982); *Poljanec v. Freed Finance Company of Wyoming*, Wyo., 440 P.2d 251 (1968).

This court, in posturing affirmation of a summary-judgment decision, under the evidentiary facts that do exist, now rewrites the determined rules of summary judgment for this case which, unfortunately, causes a result-oriented conclusion, without case-law justification.

I would reverse the pre-trial dismissal by the trial court, and afford, through the trial process, an opportunity to develop a substantially more informative record than is now available to justify the present claim of appellants to judicial consideration after 13 years and five prior lawsuits wherein this course of conflict was pursued. I would not presume whether, through trial, they would probably or even likely succeed, but a viable defined right to determination on factual resolution should have been afforded.

Cases like this cause renewed question whether current summary-judgment processes usually constitute a blessing or more frequently contribute a curse to the eternal search for justice in our adjudicatory system. It was best said by Justice Black in his dissent in *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 304, 88 S.Ct. 1575, 1600, 20

L.Ed.2d 569, *reh. denied* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968):

" * * * It certainly would not have taken one-tenth of that much time to give the case a full-dress trial, where sworn testimony before a jury rather than affidavits presented to a judge could have been used to adjudicate plaintiff's rights in accordance with due process of law. An excuse for summary judgments has always been that they save time. If the time has come when the best speed record they can make is to take 11 years to decide one of them, the idea of summary judgments as time-savers is a snare and delusion and the best service that could be rendered in this field would be to abolish summary judgment procedures, root and branch. The plain fact is that this case illustrates that the summary judgment technique tempts judges to take over the jury trial of cases, thus depriving parties of their constitutional right to trial by jury."

## ON PETITION FOR REHEARING

URBIGKIT, Justice, dissenting.

The petition for rehearing appropriately again presented the issue for review by this Court, whether the trial court either did or alternatively did properly dispose of the action under the clearly understood rules for entry of summary judgment.

Without belaboring the obvious, the complete record as specifically defined and established does not justify this decision of the Court in denying a rehearing, from which result I would also again respectfully dissent, since an exceptional anomaly for the practicing bar and trial bench in summary-judgment principles is directly created.

----

culture review and withdraw all financial support of the Toltec Reservoir.

"Discovery on this question is incomplete and we will continue to forward documentation to you as it becomes available to us."